AMERICAN BANK NOTE COMPANY, Respondent, v. THE NEW YORK ELEVATED RAILROAD COMPANY et al., Appellants.

While proof of an open, exclusive and hostile occupation of premises for twenty years by one who entered under a claim of right and asserting title, to the knowledge and possible injury of the true owner, who during that time was capable of vindicating his right, raises a presumption of title by adverse possession, which if undisputed will require a finding to that effect; the presumption is not conclusive as against other and further facts, but serves only to impose upon the owner the burden of showing the true character of the possession, and where other facts appear tending to justify a conclusion that the possession was not adverse, the question becomes at least a mixed question of law and fact.

Under the Statute of Limitations an actual adverse title is not necessary to an adverse possession; a general assertion of ownership will suffice if there be color of title, however groundless in fact.

*Broiestedt* v. *S. S. R. R. Co.* (55 N. Y. 220), distinguished.

*It seems,* the rule is different where a violation of the statute against champerty is set up. That can only be established by showing a possession under some specific title adverse to that of the grantor in the deed in question.

Mere provisions in a corporate charter for compensation to the owner of property taken *in invitum* for corporate purposes do not necessarily make an entry by the corporation upon private property in subordination to the private right; such an entry may, notwithstanding the provisions, be adverse and such as may ripen into a prescriptive title.

A right acquired by prescription can never exceed the user in which it had its origin; it is measured by the extent of that use, and that in turn by its purpose, and where essentially different purposes govern separate and successive users, it is as a general rule, impossible to deem the latter identical in any respect or degree with the former. Although a fraction of the right claimed appears to have been common to each user, where no one of them has been of itself and independent of the other for twenty years, and where the fraction was not capable of a separate user, having of itself a real and conceivable purpose, a grant cannot be presumed.

When, therefore, a trespasser defends by setting up a prescriptive right, if he fails to show such a right to the extent of the user claimed and proved, his defense fails.

Where a public use authorized by law takes no land of an individual, but merely affects him by his proximity, the necessary annoyances of that use furnish no basis for damages.

In an action commenced in 1888, to restrain the operation and maintenance of defendants' elevated railroad in a street in the city of New York in front of plaintiff's premises and to recover damages for past injuries, these facts appeared: Defendants' predecessor, the W. S. & Y. P. R. Co., in 1867, in pursuance of an act entitled "An act to provide for the construction of an experimental line of railway in the counties of New York and Westchester" (Chap. 489, Laws of 1867), constructed an elevated railroad on the east side of said street, in accordance with the requirements of the act. *i. e.*, a single track, the supporting columns of which were placed along the curbstone line; this road was operated by a cable; a bond conditioned for the payment of damages to property owners was given by said company as required by the act (§ 11). In 1868, having received the certificate of the commissioners required by the act (§§ 3, 5), before the road could be operated, the company commenced the operation. In 1871, steam dummies were substituted as the motive power. In 1872, said company transferred its property and franchises to the defendant, the N. Y. E. R. Co., which transfer was confirmed by the legislature; (Chap. 595, Laws of 1875) thereafter, turnouts were built at different times

and a track on the west side of the street constructed. In 1879, the track on the east side was reconstructed; the columns were removed from the curb line to a line sixteen inches within the sidewalk. Since 1878, the road has been operated by trains drawn by steam engines. Plaintiff became the owner of the premises in question in 1883. The court found that part of the light, air and access of these premises was taken for the use of the railroad in 1868, and has been continuously used ever since for railroad purposes, but refused to find that before this action was commenced, the presumption of a grant of the right to maintain and operate an elevated railroad on the east side of Greenwich street, from the then owner of said property to the defendants' predecessor company, had become conclusive by lapse of time. *Held*, no error; that the original entry by defendants' predecessor was not under a general claim of right, but under a specific legislative grant, beyond which nothing was claimed, and so, at least until the action of the commissioners, it was merely temporary and experimental; that while the possession thereafter was adverse, the changes made in 1879 were material and substantial, injuriously affecting the rights of property owners, and the right thereafter claimed was not identical with the original user; that the fact that some undefined and non-separable part of plaintiff's rights in the street, taken originally, were also taken by the changed structure did not give title to that part, although continuously used for twenty years; that having been so used as an integral element of two different users, it must share the fate of such users, and as neither was continuous for the period required, no prescriptive right had been acquired.

*Baldwin* v. *Calkins* (10 Wend. 169); *Broistedt* v. *S. R. R. Co.* (55 N. Y. 220), distinguished.

After the commencement of this action defendants instituted condemnation proceedings to acquire plaintiff's street rights. *Held*, that this was a formal admission, of record, of title in the plaintiff to the rights in question; and that conceeding such an admission would not destroy a prescriptive right already acquired, it was evidence tending to show what the real character of the possession claimed to be adverse in truth was.

In awarding an injunction the court fixed as an alternative the payment of a sum specified for the permanent or fee damage; of that amount $1,000 was specifically awarded as damages resulting from the noise caused by the operation of the road. *Held*, error; that the noise could not properly be taken into consideration as an element of fee damage.

The allowance of alternative damages in such a case is to be deemed a substitute for the ordinary proceedings for condemnation; and so, the amount of the allowance is not wholly in the discretion of the court, but must be for such and only such damages as would be given in condemnation proceedings.

As the elevated roads in said city stand wholly upon lands owned by the municipality, they are liable to abutting owners only for such consequential damages as result from the invasion of property rights; that

is, the taking·of their easements in the streets — these are, the easement of air, which is impaired by smoke and gases, ashes and cinders; the easement of light, impaired by the structure itself, and the passage of · cars thereon; the easement of access, affected by the drippings of oil and water and by the frequent columns.

*Matter of U., C. & S. V. R. R. Co.* (56 Barb. 486); *Matter of N. Y. C. & H. R. R. R. Co.* (15 Hun, 63); *In re N. Y. L. & W. R. R. Co.* (29 id. 1), disapproved.

(Argued October 14, 1891; decided December 1, 1892.)

Appeal from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made March 9, 1891, which affirmed a judgment in favor of plaintiff · entered on a decision of the court on trial at Special Term.

This action was brought to restrain defendants from operating their elevated railroad in Greenwich street, in the city of New York, in front of plaintiff's premises, and to recover damages.

The facts, so far as material, are stated in the opinion.

*Julien T. Davies* and *J. C. Thomson* for appellants. The erection of the original railway in Greenwich street in 1868, and the continued maintenance of that railway and of the present structure for the period of twenty years, have given to the defendants a prescriptive right to maintain a railway of the same nature and dimensions and in the same place as the railway originally constructed in 1868, and have to that extent extinguished the plaintiff's easements in Greenwich street. (*Baldwin* v. *Calkins,* 10 Wend. 169; *Prentice* v. *Girger,* 74 N. Y. 341; *Lattimer* v. *Livermore,* 72 id. 174; *Welsh* v. *Taylor,* 50 Hun, 137, 144; *Smyles* v. *Hastings,* 24 Barb. 44, 49; 22 N. Y. 217, 224; *Arnold* v. *Stevens,* 24 Pick. 106; *Jennison* v. *Walker,* 11 Gray, 423; *Chandler* v. *J. P. A. Co.,* 125 Mass. 544; *Jeakle* v. *Nace,* 2 Whart. 123, 136; *Bowen* v. *Dean,* 6 Rich. 298; *Village of Auburn* v. *Goodwin,* 128 Ill. 57; *Dill* v. *School Board,* 20 At. Rep. 739; *Webber* v. *Chapman,* 42 N. H. 326; *Snell* v. *Levitt,* 110 N. Y. 595.) Defendants' user was adverse to plaintiff's easements. (*Fobes* v. *R.,*

*W. & O. R. R. Co.*, 121 N. Y. 505; *Parker* v. *Foote*, 19
Wend. 309; *Burbank* v. *Fay*, 65 N. Y. 57; *Hammond* v.
*Zehner*, 21 id. 118; *Eckerson* v. *Crippen*, 110 id. 585; *Jenni-
son*, v. *Walker*, 11 Gray, 423; *People* v. *O'Brien*, 111 N. Y.
1; *Powers* v. *M. R. Co.*, 120 id. 178.)  Defendants' possession
was not subordinate to the plaintiff's title.  (*Crary* v. *Goodman*,
22 N. Y. 170; 1 R. S. 739, § 147; *Sands* v. *Hughes*, 53 N.
Y. 287; *Dawley* v. *Brown*, 79 id. 390; Washb. on Ease-
ments, 649; *Cartwright* v. *Maplesden*, 53 N. Y. 622.)
Defendant had a prescriptive right to maintain the nuisance.
(*Heig* v. *Licht*, 80 N. Y. 579; *Uline* v. *N. Y. C. & H. R.
R. R. Co.*, 101 id. 98; *Dana* v. *Valentine*, 5 Metc. 8;
*Bliss* v. *Hall*, 5 Scott, 500; Wood on Nuisance, § 711.)
The court erred in computing the amount of damage sustained
by the plaintiff in consequence of the defendants' acts.  (*Van-
derslice* v. *Newton*, 4 N. Y. 130, 132; *Low* v. *Archer*, 12 id.
277, 282; *Parsons* v. *Sutton*, 66 id. 92, 96; *Strang* v. *White-
head*, 12 Wend. 64; *Havemeyer* v. *Fuller*, 60 How. Pr. 316,
322; *Maloney* v. *Dows*, 15 id. 261, 265; *Parker* v. *Lowell*,
11 Gray, 353; *Adams* v. *Barry*, 10 id. 361; *Plimpton* v.
*Gardner*, 64 Me. 360; *Potter* v. *Froment*, 47 Cal. 165; *Squier*
v. *Gould*, 14 Wend. 159; *Holt* v. *Sargent*, 15 Gray, 97;
*Hutchinson* v. *Parkinson*, 64 N. H. 89; *Griffin* v. *Colver*, 16
N. Y. 489; *Walrath* v. *Redfield*, 11 Barb. 368; *Campbell* v.
*Seaman*, 63 N. Y. 568; *Tallman* v. *M. E. R. Co.*, 121 id.
119; *B. & P. R. Co.* v. *F. B. Church*, 108 U. S. 331.)  The
court erred in requiring the defendants, as the sole condition
upon which they might legalize their structure, to pay for
noise and other incidental annoyances from the running of
trains in the future.  (*Fobes* v. *R., W. & O. R. R. Co.*, 121
N. Y. 505; *Lahr* v. *M. E. R. Co.*, 104 id. 295; *Kane* v. *M.
E. R. Co.*, 34 N. Y. S. R. 874; 125 N. Y. 164; *In re N. Y.
E. R. Co.*, 36 Hun, 427; *Greene* v. *N. Y. C. R. R. Co.*, 12
Abb. Pr. 124, 145, 148; *Taylor* v. *M. E. R. Co.*, 28 J. & S.
311, 328; *F. N. Bank* v. *N. Y. E. R. Co.*, 24 Fed. Rep. 114,
118.)  It is not necessary to specially plead prescription, and
even if it were, it is specifically set forth in the complaint.

(*Baker* v. *Oakwood*, 123 N. Y. 16.)  The existence of the railway was continuous as matter of law.  (Laws of 1867, chap. 489 ; Laws of 1868, chap. 855 ; Laws of 1875, chap. 595 ; *In re N. Y. E. R. R. Co.*, 70 N. Y. 327.)  The enlarging of the use originally enjoyed within the period of prescription does not affect the claim of these defendants to a prescriptive right to maintain a railroad of nature and dimensions similar to the original.  (*Baldwin* v. *Calkins*, 10 Wend. 169 ; *Prentice* v. *Geiger*, 74 N. Y. 341 ; *L. M. R. Co.* v. *Hambleton*, 40 Ohio St. 496 ; *R. C. Co.* v. *Radcliffe*, L. R. [10 Q. B.] 287.)  Corporations endowed with the power of eminent domain may acquire a prescriptive title, notwithstanding the obligation to make just compensation for property taken.  (*Bloodgood* v. *M. & H. R. Co.*, 18 Wend. 9 ; *In re N. Y. E. R. R. Co.*, 70 N. Y. 327 ; *Dusenbury* v. *M. U. T. Co.*, 64 How. Pr. 206 ; *Williams* v. *B. E. R. R. Co.*, 126 N. Y. 96 ; *Tallman* v. *M. E. R. Co.*, 121 id. 119 ; *L. V. R. Co.* v. *McFarlane*, 43 N. J. L. 905 ; *F. R. Co.* v. *Page*, 131 Mass. 391 ; *Hargis* v. *K. C. C. & S. R. Co.*, 100 Mo. 210 ; *Organ* v. *M. & L. R. R. Co.*, 51 Ark. 235.)

*W. G. Peckham* for respondent.  A later purchaser can recover the damages suffered during his ownership, and the damages for the future should be paid to the present owner and be assessed as of the present date, on the property as it now stands.  (*Esterbrook* v. *E. R. Co.*, 51 Barb. 95 ; *Carl* v. *S. & F. L. R. R. Co.*, 46 Wis. 625 ; *Blesch* v. *R. Co.*, 43 id. 183–195 ; *Buttishill* v. *Reed*, 18 C. B. 696 ; *Bare* v. *Hoffman*, 79 Penn. St. 71 ; Sedg. on Dam. 162 ; Field on Dam. § 748 ; *Holmes* v. *Wilson*, 10 Ad. & E. 503 ; *Thompson* v. *Gibson*, 7 M. & W. 456 ; *Bowyer* v. *Cook*, 4 C. B. 236 ; *Pennoyer* v. *City of Saginaw*, 8 Mich. 534 ; *Davis* v. *Lamberteon*, 56 Barb. 480 ; *Blunt* v. *McCormick*, 3 Den. 283 ; *Waggoner* v. *Germaine*, Id. 306 ; *C. & O. C. Co.* v. *Hitchinas*, 65 Me. 140 ; *N. Y. N. E. Bank* v. *M. E. R. Co.*, 108 N. Y. 660 ; *Tallman*, v. *M. E. R. Co.*, 121 id. 119 ; *Corning* v. *T. I. & N. F. Co.*, 40 id. 203 ; *Murdock* v. *Prospect*, 73 id. 580 ; 2 Hilliard on

Real Prop. 356; *Mulligan* v. *Elias*, 12 Abb. Pr. [N. C.] 268). The twenty years' statutory limitation is not pleaded and, therefore, cannot avail the defendants. (*Uline* v. *N. Y. C. & H. R. R. R. Co.*, 101 N. Y. 98.)   Only a deed from the owner or the decree in condemnation, will avail the wrong-doer. (*Arnold* v. *H. R. R. R. Co.*, 55 N. Y. 661; *Batchelder* v. *Sanborn*, 24 N. H. 274; *Eggleston* v. *N. Y. & H. R. R. Co.*, 35 Barb. 162; *Menendez* v. *Holt*, 128 U. S. 523; *Powers* v. *M. R. Co.*, 120 N. Y. 178; *Brant* v. *V. C. & I. Co.*, 93 U. S. 929; *In re Broiestedt*, 55 N. Y. 222.)   Adverse possession is a prerequisite to prescription. (Angell on Lim. 312; 3 Suth. on Dam. 398.)   Where the railroad has not made compensation, and is, therefore, a wrong-doer, whatever the wrong-doer puts on the owner's highway or lot belongs to the owner. (*Meriam* v. *Brown*, 128 Mass. 391; *Hunt* v. *M. P. R. Co.*, 76 Mo. 115.)   A corporation is entitled to such damages as the court awarded to this plaintiff as a corporation.   A corporation can recover for expenses and losses in its business. (2 Wait's Act. & Def. 321; *Francis* v. *Schoellkopf*, 53 N. Y. 154; *Schile* v. *Brophaus*, 80 id. 619; *S. & L. Bank* v. *Thompson*, 18 Abb. Pr. 416; *Driver* v. *M. U. R. R. Co.*, 32 Wis. 569; *Jutte* v. *Hughes*, 67 N. Y. 271; *Colrick* v. *Swinburne*, 105 id. 507.)   To establish prescription the occupation or user, to be valid, must have been with the acquiescence and knowledge of the owner. (Gerard on Titles [3d ed.], 745; *Parker* v. *Foote*, 29 Wend. 313; *Flora* v. *Carbean*, 38 N. Y. 111; *Miller* v. *Garlock*, 8 Barb. 153; *Burbank* v. *Fay*, 65 N. Y. 57; 3 Washb. on Real Prop. 52; *Neale* v. *Seeley*, 47 Barb. 316.)   To establish prescription the adverse user for the period of twenty years must have been substantially the same — here it was materially enlarged.   A prescription is entire and cannot be split. (*Prentice* v. *Geiger*, 74 N. Y. 346; *Reed* v. *State*, 108 id. 414; *Uline* v. *N. Y. C. & H. R. R. R. Co.*, 101 id. 98; *Campbell* v. *Seaman*, 63 id. 585; *Burbank* v. *Fay*, 65 id. 65; *R. C. Co.* v. *Radcliffe*, L. R. [18 Q. B.] 287; *G. S. C. Co.* v. *Hall*, 1 M. & G. 392; *People* v. *White*, 11 Barb. 26; *Heyward* v. *Mayor, etc.*, 7

N. Y. 314; *Rexford* v. *Knight*, 11 id. 308; *Mahon* v. *N. Y. C. R. R. Co.*, 24 id. 658; Angell on Lim. [6th ed.] 412; *Crosby* v. *Bessey*, 49 Me. 543; *Stein* v. *Burden*, 24 Ala. 149; *Cotton* v. *P. M. Co.* 54 Mass. 433.)

FINCH, J.   This appeal is from a judgment awarding to the plaintiff compensation for the taking of its property by the construction and maintenance of the elevated railway in Greenwich street and in front of plaintiff's premises abutting on that street; and also assessing damages for past injuries occasioned by the same operative cause; and two principal questions are presented for our consideration.

The defendants assert title by prescription to so much of the plaintiff's property in the street as was originally taken by the West Side and Yonkers Patent Railway Company, to whose rights and franchises the defendants have succeeded. If upon the trial a broader right by prescription was claimed, it had its sufficient answer in the remark of the court appended to the fifth request of the defendants' proposed conclusions of law, that " the defendants have not maintained and operated a road in the present condition for twenty years.   They cannot by using a one-track road for fifteen years and a four-track road for five years obtain the right to run the four-track road by prescription."   That is so obviously true as to make needless any further reference to the broader claim, but a narrower and more plausible one was asserted and founded upon a distinct finding of fact " that a part of the light, air and access of the premises Nos. 115 to 123 Greenwich street was taken for the use of defendants' railroad when it was first constructed and put in operation July 2, 1868, and has been continuously used since for said railroad purposes."   There is no finding of fact that this continuous possession of some undefined and undescribed part of plaintiff's property in the street was adverse.   On the contrary, the court refused to make such finding, and further refused the defendants' proposed conclusion of law " that before this action was commenced the presumption of a grant of the right to maintain and operate an

elevated railroad on the east side of Greenwich street from the then owner of said property to the defendants' predecessor's company had become conclusive by lapse of time." Exceptions were taken to these refusals and raise the question to be discussed, for, without criticising the manner of the requests or the form of the pleadings, we think it best to meet the claim in its full force and dispose of it on the merits. It was quite material to the defense interposed, for, while the narrower and final claim does not justify the complete and entire infringement upon the rights of the abutting owner shown by the proof, since the present railway destroys those rights to a much greater extent and in a more injurious manner than resulted from the original structure, yet it is argued that the claim bears upon the question of permanent or fee damage, and that by rejecting the defendants' prescriptive right on the east side of the street, if in fact it existed, compensation has been awarded to the plaintiff to some extent for property which in reality belonged to the defendants. The question, therefore, is whether they obtained title to any part of the plaintiff's incorporeal right in the street, and that again resolves itself into the inquiry whether the possession of the defendants and their predecessors was continuous and was or was not adverse. Ordinarily, that is a question of fact. It may be conceded that where the undisputed proof shows that the party asserting title entered upon the premises under a claim of right adverse to the true owner and retained an open, exclusive and hostile occupation for twenty years, to the knowledge and palpable injury of such owner while not incapable of vindicating his rights, and there are no other or contradictory facts, a presumption of title will arise and the court should find in accordance therewith. But the presumption is not conclusive as against other and further facts. It serves only to shift the burden of showing the true character of the possession to the owner. (*Hammond* v. *Zehner*, 21 N. Y. 118.) And where there are other facts, tending to justify a different inference and leading fairly to a contrary conclusion, they also are to be taken into the account, and the question

becomes, if not wholly one of fact, at least a mixed question of law and fact, depending more or less upon the circumstances proved. Such I believe to be the situation in the case at bar; for, if not at the beginning of the railway occupation, at least along the line of its continuance and at the end of the twenty years, there were facts and incidents which challenge the adverse character of the possession, and its continuity as unbroken or unchanged.

The West Side and Yonkers Railway Company became a corporation under the general act of 1850. By force of its provisions the company had the right of eminent domain and could condemn such property of individuals as it needed for its corporate purposes. But in 1867, by chapter 489 of the laws of that year, it was given special and peculiar rights in the streets of the city. The act was entitled, " An act to provide for the construction of an experimental line of railway in the counties of New York and Westchester," and authorized the primary erection of an elevated railroad beginning at the southerly extremity of Greenwich street and extending northerly for half a mile. The supporting columns were to be placed along the curb-stone line and to carry a track not more than five feet in width, the centre of the track to be perpendicular to the centre of the columns and not less than fourteen feet above the surface of the pavement. The road was required to be " operated exclusively by means of propelling cables attached to stationary engines placed beneath or beyond the surface of any street through which said railway may pass, and shall be concealed from view so far as the same may be detrimental to the ordinary uses of said streets." The half mile of road was to be completed in one year, and its experimental character was shown by the provision that when ready for operation it should be inspected by commissioners appointed for that purpose, upon whose report that it could be operated with safety and dispatch, its extension northerly was to be permitted, but upon whose report to the contrary the structure was to be taken down and the street restored to its original condition. Until the action of the commissioners, at least, the

possession of the railway company was both temporary and experimental. The act, however, contained other provisions. By section seven it was enacted that " any private property used or acquired shall be compensated for by said company under provisions of *existing laws authorizing the formation of* railroad companies and the acquisition of rights of way therefor." The provision seems to have contemplated some possible user of private property, for which compensation should be made. By section eleven it was provided : " The said company shall be liable for and shall pay all damages which may result to private property or the owners thereof by reason of the construction of said road," and was required to give a bond in the penal sum of five hundred thousand dollars conditioned for the payment of all such damages.

The entry and possession of the West Side and Yonkers Company was under this charter. That was the grant and the specific title under which it occupied and used the streets as it did occupy and use them. The entry was not under a general claim of right adverse to all others, but under a specific and definite legislative grant, beyond and outside of which nothing was separately claimed. Neither the company nor individuals along the line knew that this title was imperfect, because there were incorporeal rights in the street, belonging not to the public, but to the abutting owners; and yet the property in fact existed and the company took it without right, but it must be admitted, under color of title and claim of right, since the property taken was within the apparent and possible bounda- ries of the grant under which the entry was made, and for a time was supposed by both parties to be in fact within its actual and legal boundaries. We have described that entry as a trespass, as an invasion of the rights of the adjoining owners, and as an exclusive and injurious seizure of their incorporeal rights in the street. The possession which followed we have declared to be a continuous wrong, for which all the time and every day damages accrued and should be awarded. That such an entry may be adverse and sufficient to initiate a pos- session which, at the end of twenty years, would ripen into a

title, would seem to be quite clear were it not for the decision of the General Term that the entry was in subordination to the rights of the abutters, and so not adverse to them.   The authority relied on is the case of *Broiestedt* v. *South Side R. R. Co.* (55 N. Y. 220), which, I think, has no just application to the case in hand, as the learned counsel for the appellants elaborately explains.   The action was by the owner of the soil of a highway to restrain the maintenance and operation of a railroad in front of his premises.   The answer was, among other things, that the plaintiff's deed was void because the *locus in quo* was held adversely by the defendant at the time of the conveyance.   The court ruled to the contrary, using this language :  " The possession was not adverse, but was under license by act of the legislature which only extended to the rights of the public.   The entry under this license is presumed to have been in subordination to the rights of the owner." . It must be observed of this decision that it related to the defense of champerty.   A violation of the statute in that respect could only be shown by establishing a possession under some specific title which was itself adverse to the title of the plaintiff grantee.   (*Crary* v. *Goodman*, 22 N. Y. 170.)   There must be a specific adverse title before there can be an adverse holding under the statute against champerty.   (*Sands* v. *Hughes*, 53 N. Y. 287.)   Bearing in mind this distinction, it is easy to see what was in truth decided in the *Broistedt* case.   The specific title asserted was one which transferred the public right.   That public right was consistent with the private right, and in no respect conflicted with it or assailed it.   The legislative grant, therefore, neither conveyed nor purported to convey the fee in the soil, which was the title asserted, nor any right of the individual owner, and so it appeared that the defendant, required to show the specific title under which it claimed to hold, showed only one which was not adverse to that of the plaintiff, because it showed none at all to the right which was the basis of the plaintiff's claim.   Having, therefore, no adverse title, the defendant's possession could not be an adverse holding under the statute, and if not adverse, it

must necessarily be presumed to have been in subordination to the plaintiff's title and right. That was the scope of the decision and its full and entire force. But in the present case and under the Statute of Limitations, an actual adverse title is not necessary to an adverse possession. The latter may be asserted and may exist without showing any specific title at all. A general assertion of ownership will suffice if there be color of title, however groundless in fact, and in such a case the possession may be adverse and, therefore, not presumptively in subordination to the rights of the true owner. As against a defense that the plaintiff's deed was void because, when taken, the street right was adversely held, the *Broistedt* case is decisive, but as against the defense of title by prescription derived from a general adverse possession of the appurtenant rights under claim of right and color of title, that case is not available.

Nor can I sustain the doctrine of the General Term upon the ground that the charter under which the company entered recognized the abutter's street rights through the provisions for compensation. The terms of section seven relate to the ordinary acquisition of private property by condemnation, and undoubtedly had in view lands out of the street necessary for power stations, or other incidental conveniences, and the provision of section seven, requiring the payment of consequential damages to any private property injured, indicates a legislative understanding that the condition was necessary, because, without it, the injured parties would have no redress. So far from recognizing street rights in the abutters, it inferentially assumes, as was then supposed, that they had no existence.

Indeed, mere provisions for compensation in a charter have never been regarded as making the entry upon private property necessarily subordinate to the private right, and very numerous cases could be cited in which the entry was deemed adverse and such as could ripen into a prescriptive title, although made under an authority which provided for compensation. (*Baldwin* v. *Calkins*, 10 Wend. 169; *Lehigh Val. R. R. Co.* v. *McFarlan*, 43 N. J. 905; *Galway* v. *Met. Elev. R. R. Co.*, 128 N. Y. 132.)

The theory of the General Term, therefore, cannot be sustained, while nevertheless, it may very well be that two circumstances connected with the original entry should be taken into account as bearing upon the character of the possession, although not at all conclusive. The entry was temporary and experimental, asserting no permanent or absolute right, and neither party knew or supposed that any street rights of abutters existed. There was no conscious or intended adverse holding by the company, and no conscious or intended submission by the plaintiff. While that mutual ignorance may not legally change the situation, it is an element in the conduct of the parties which may be taken into the account.

But there are further facts. The act of 1867 was followed by the supplemental act of 1868 (Chap. 855). That extended the time of construction for six months; authorized such form of application of the propelling cable or other motor as the commissioners should approve; dictated the payments to be made to the city, and permitted a change of the company's name. In June of that year, a favorable certificate of the commissioners was made and filed, and the road was put in operation, propelled by a cable, July second following. In 1871, steam dummies were substituted for the cable, and in 1879, the east track was taken down and, as it is said, reconstructed. That process, however, involved a removal of the columns from the curb line a distance therefrom and within the sidewalk of sixteen inches. I think these changes were material and substantial, and injuriously affected the adjoining owners, and that the right now claimed and exercised is not identical with the original user. Nor am I able to concede that because some part of the plaintiff's right to light and air and access taken by the experimental road is also taken by its successor, a title is made to that undefined and non-separable part. The user cannot in that manner be divided and separated, and never was so divided and separated. The part continuously used was so used as an integral element of two different users, and having no separate and severable existence or identity, must share the fate of such different users, and can-

not stand upon its own, which never had a defined and independent existence. I think that truth must necessarily follow from two considerations. In all cases of rights by prescription, the right acquired is measured by the extent of the use, and that in turn by the purpose of the user; and where essentially different purposes govern separate and successive users, it is rarely, if ever, possible to deem the latter identical in any respect or degree. A right of way for one purpose gained by user cannot be turned into a right of way for another purpose, if the latter adds materially to the burden of the servient estate, and the right derived from user can never outrun or exceed the user in which it had its origin. It is also to be recalled that prescription pre-supposes a grant which conveys a definite right corresponding in all materal respects with some equally definite user, which has a distinct and tangible purpose. Now it is possible to presume a grant for a track above the curbstone line, and for the purpose of a cable road: and also to presume another and different grant for a right above the sidewalk and the purpose of a steam railway: but how can we presume a grant of a fraction common to each, which never had a user of its own or a purpose of its own, and could not accomplish either one of the two existing purposes? We are referred to the case of *Baldwin* v. *Calkins* (10 Wend. 169), as showing that a separable excess of user beyond that authorized, may be cut off and leave the true right uninjured and intact. But that true right preserved was a definite and distinct right, capable of a separate user, and having a real and conceivable purpose, but nothing of that sort can be said of the fraction here claimed.

The new use on the east side is essentially different from the earlier one even as it respects the single track, and cannot be saved or modified by tacking to it the use for a cable road on the curbsone line. For, if we suppose that in 1867 the plaintiff had granted to the defendants the right to construct and operate a cable road supported by columns in the curbstone line, and thereafter the latter had built and operated on the east side the present road and were sued for so doing, the

previous grant would certainly be no defense to an injunction
or damages. In *Davenport* v. *Lamson* (21 Pick. 74), the facts
were that the defendant had a right of way to carry hay from
a three-acre lot across plaintiff's close, and owning another lot
of nine acres adjoining his three acres, threw down the fence
between and began to carry across the produce of the twelve
acres, and was sued in trespass *quare clausum*. The court
held the action maintainable and that the case was not one for
the apportionment of damages. The doctrine involved was
very evidently that the trespass was such as a whole, though
some inseparable lesser right might be mixed in with it. And
in another case it was ruled that where a town had enjoyed a
drain to discharge water on another's land for a period less
than twenty years, and then deepened it and enlarged it and
varied its course, but continued to use it, such change inter-
rupted the use and prevented an acquisition of the easement
short of twenty years enjoyment of it as it then was. (*Cotton*
v. *Pocasset Mfg. Co.*, 13 Met. 429.) These illustrations show
what changes are sufficient to interrupt the use and turn a
right into a wrong, and that the latter is not affected or modi-
fied even as to damages, because there is in it some inseparable
or indivisible element of right. Such a mingling is wholly
the act and fault of the trespasser. His conduct is such as to
make impossible any apportionment, and so where he claims
title by user he cannot, upon the same principle, lessen that
title to the indivisible and inseparable fragment in order to
add together two radically different users, that they may extend
over twenty years. Indeed that fragment itself was used
differently by the successive companies, and so as to make
utterly unjust any attempt to utilize the earlier silence and
submission of the adjoining owner. While that fraction was
used as incidental to a cable road on the curbstone line the
plaintiff might have submitted to it because the inconvenience
was no greater ; but to add that submission to another and
radically different use, which is resisted before it ripens into a
title, in order to gain ownership of the fragment, is obviously
unfair and unjust. It may be said generally that one cannot

prescribe for an indivisible fraction of two essentially different users having essentially different purposes because such fraction happens to be common to both. If the fraction is itself a complete and independent user, representing a complete and entire right it · may stand, with the fractional and separable excess rejected. But if it be itself a mere fraction of two different users, which never could be used by itself for either of the two purposes, and never existed as an independent and practicable right, and is dependent in each case upon the users to which it belongs, it cannot be separately prescribed for.

The views thus expressed on this branch of the case appear to be equally supported by the authorities if the construction and operation of the elevated road is treated as a nuisance, as we have sometimes declared it to be. The rule is stated in Wood on Nuisances (§ 710, p. 727), that a prescription is entire and cannot be split by either the party setting it up or the party opposing it. And where the action was for polluting the air and the defense a prescriptive right the defendant was required to show that he had a right to do all that the declaration charged. He could not defend by setting up a prescriptive right to do less and if he failed to show one to the extent of the user with which he is charged his action was undefended. (*Rotheram* v. *Green*, Noy. 67; *Tapling* v. *Jones*, 11 H. L. Cases, 290; *Weld* v. *Hornby*, 7 East. 195; *Bailey* v. *Appleyard*, 3 Nev. & P. 257.)

But there is still another fact to be considered. After the expiration of twenty years from July 2, 1868, and during the pendency of the present action, the defendants instituted proceedings to condemn the plaintiff's street rights. There is no question over the admissibility of the evidence, for the defendants themselves gave the proof. This proceeding was necessarily a solemn and formal admission of record of title in the plaintiff to the incorporeal rights in question. It is to be granted that such an admission made after the prescriptive right had been acquired, would not serve to destroy it. But the admission is evidence, reflecting back on what has occurred, and tending to show what the real character of the possession

claimed to be adverse in truth was. (*Perrin* v. *Garfield*, 37 Verm. 304.)  The company knew what its own possession and that of its predecessor had actually been, and it is hardly conceivable that, if such possession had been adverse either in fact or in intention, an admission would be formally made of ownership in the easements outstanding in the abutter.

We are thus enabled to see all the facts, aggregated, upon which the trial court acted in determining that there was no adverse possession for twenty years.  It was shown that the original entry was temporary and experimental, and even after the certificate of the commissioners remained such in fact while operated as a cable road, and ended in practical failure ; that the original possession was in ignorance of the right at a later period claimed on one side and denied on the other ; that the only possession for twenty years was of an unseparated and inseparable fragment of the two essentially different uses ; and that after the twenty years the defendants instituted proceedings for the condemnation of the plaintiff's street rights. Upon these facts it is quite apparent that the conclusion of the trial court denying the adverse possession claimed was not only warranted by the evidence, but entirely justified by it.

Passing over some other questions raised by the appellants, which we have examined but do not think it necessary to discuss, we come to a final question relating to the measure of damages.

In awarding an injunction restraining the continuance of the elevated road in front of plaintiff's premises the court fixed as an alternative the payment by defendants of fifty thousand dollars for the permanent or fee damage, and specifically awarded one thousand dollars of that amount as damages resulting from the noise of the passing trains.  We have already decided that in an action at law for the wrong done to abutters and in which past damages only are sought, the elevated roads are liable for the noise of their trains, upon the ground that they are trespassers and responsible for all injuries resulting from their wrongful act.  (*Kane* v. *N. Y. El. R. R. Co.*, 125 N. Y. 164.)  Probably the old technical action of

trespass was inappropriate, as was the action of ejectment, to the redress of an injury to an incorporeal right, but the wrong done could have been reached by an action on the case, and may properly be called a trespass upon the property of the abutting owners, and the trespassers are liable for all the damages resulting from the wrong.

But the question is quite different when no trespass and no wrong is in any manner involved, and the sole inquiry respects the compensation to be awarded to an owner whose property is to be rightfully taken under the due authority of law. There is no doubt in this case, and I think no doubt in any case, that the injunction of a court of equity and its alternative damages are to be deemed a substitute for the ordinary proceeding for condemnation with the practical difference only that in the one case the company is the moving party and in the other the owner. For this court does not in the least degree assent to the doctrine which has sometimes been advocated that the alternative damages are wholly in the unlimited discretion of the court, and so the elevated roads entirely at their mercy. We had supposed that every trace of a boundless and arbitrary discretion in a court of equity had wholly disappeared. There is no difficulty in assuming that the alternative damages are awarded to the same extent and for the same elements as the compensation given in a special proceeding for the condemnation of land under the law of eminent domain. Such a process in each case ends in the same substantial redress. The form is different but the result is identical. It follows, therefore, that the alternative damages of equity must be such and only such as would be given in a proceeding for the condemnation of lands for a railroad use, due regard being had to the different characteristics of the property to be taken. We must, as a consequence, recur to the legal rules which have been established in such cases.

They have their foundation in the constitutional provision that private property shall not be taken for public use without just compensation, and in the terms of the General Railroad Act formulating the mode of procedure. Those provisions are

made applicable to the present controversy both by the original West Side & Yonkers charter and by a substantial repetition in the Rapid Transit Act of 1875, so that the rules governing the acquisition of private property by the elevated roads are identical with those controlling the similar acquisition by surface railroads, modified only by the character of the property acquired. What the elevated roads take from the abutter are his easements of light, air and access. The extent of that taking involves some things which, in the case of a surface road, would be merely incidental or consequential injuries for which the abutter could not recover, since it is well settled, both in this state and under even the broad English statute of 8 & 9 Vict., that where a public use authorized by law takes no land of an individual, but merely affects him by its proximity, the necessary annoyances of that perfectly lawful use furnish no basis for damages. Now, the elevated roads take no land from the abutter. They stand wholly upon the land owned by the municipality, and no consequential damages flowing from the lawful corporate user could be recovered but from the fact that some of them, though not all of them, have been by the *Story* case transformed from consequential injuries into invasions of property rights. To the extent of that transformation the rule of damages must feel the effects of the change, but beyond that the further consequential injuries have not lost or changed their character, and to allow them as elements of compensation is to transform them also into invasions of property, and add a new brood of easements to those already awarded to the abutter, instead of leaving them, where the *Story* case left them, the mere incidents of a lawful use. In the *Drucker* case the full extent of the transformation bringing with it the liability for damages was sketched in these words: " Smoke and gases, ashes and cinders affect and impair the easement of air ; the structure itself and the passage of cars lessen the easement of light ; the drippings of oil and water and possibly the frequent columns interfere with the convenience of access :" but there is no hint of any allowable recovery beyond

what *pro tanto* constituted some element of the taking.   In the *Lahr* case, RUGER, Ch. J., was equally guarded, saying that the incidental injuries could be recovered " provided the evidence established the fact that they were destructive of the easements of light, air and access :" and these careful expressions were used although neither case involved a question of fee damage.   I am averse to adding to the abutter's easements by changing their name and doing indirectly what I am sure none of us would do directly.

Even the ground upon which that effort is necessarily rested partakes of the uncertain qualities of a quicksand.   It is said first that the taking of easements should be deemed the equivalent of the taking of land.   That was held in the *Duke of Buccleuch's* case (L. R. [5 Eng. & Ir. App.] 418), where the easement affected was a right of way, and so quite different from the *quasi* easements of abutters, as well as unaffected by the peculiar considerations which surround the new and unusual use.   It is then said that, under the law affecting surface railroads where the land of the owner is taken, he is entitled to the diminution in the value of the part not taken occasioned by the use to which the part taken is to be put.   The analogy relied on is, I think, not at all perfect, and the rule invoked is by no means settled, but on the contrary most strongly held the other way.   The current of authority in the Supreme Court, which has been the final arbiter in this class of proceedings, is rather against than for the doctrine asserted.   In *Troy & Boston R. R. Co. v. Lee* (13 Barb. 169), and more explicitly in *Albany Northern R. R. Co. v. Lansing* (16 Barb. 69), it was said that the award should only be for the taking of the land and not for the use made of it by the railroad, and it was argued with great justice that since the statute excluded a consideration of the benefits resulting to the land from the railroad it was unfair to compensate the owner for the disadvantages of the new use and leave him to appropriate the advantages.   The doctrine was followed in *Canandaigua & N. F. R. R. Co. v. Payne* (16 Barb. 273); *Matter of Union Village & J. R. R. Co.* (53 id. 457); *Black Riv.*

*& M. R. R. Co.* v. *Barnard* (9 Hun, 104); *Albany & Susque-hannah R. R. Co.* v. *Dayton* (10 Abb. Pr. R. [N. S.] 183); *Matter of Boston Road* (27 Hun, 409), and the earlier cases were cited without a hint of disapproval in *Henderson* v. *N. Y. Central R. R. Co.* (78 N. Y. 433). But there came a change in *Matter of Utica, C. & S. V. R. R. Co.* (56 Barb. 456). That case justified damages resulting from the use, founding its reasoning upon the language of the statute, a view which the last edition of *Sedgwick on Damages* controverts as based upon a misconception. That case and its changed rule was followed in two others (*Matter N. Y. C. & H. R. R. R. R.* 15 Hun, 63; *In re N. Y. Lack. & Western R.*, 29 id. 1). but was deliberately overruled in *Matter of N. Y. Elevated R. R. Co.* (36 Hun, 427), which was a condemnation proceeding to take Story's easements, the existence of which he had vindi-cated. On such a state of the authorities it is not possible to say that there is any such settled rule as that contended for, and if there should be in the future I think it ought at least to be somewhat limited. But whatever may be the ultimate rule in surface railroad cases, I think that, as to the elevated roads, the noise of their operation should not be taken into account as an element of fee damage.

It follows that the judgment should be modified by striking out the sum of $1,000 allowed for noise, and as modified affirmed, without costs in this court to either party as against the other.

All concur, except RUGER, Ch. J., PECKHAM and O'BRIEN, JJ., who dissent as to modification of judgment.

Judgment accordingly.