JOHN DUNBAR WRIGHT and Others, Respondents, *v.* THE NEW YORK ELEVATED RAILROAD COMPANY and Others, Appellants.

*Measure of damages to real estate caused by an elevated railroad — finding against evidence — form of judgment.*

The measure of damages which abutting owners on the street of a city are entitled to recover for trespasses committed by an elevated railway on street easements is the diminished rental value of the abutting premises caused by the trespasses. The amount of rent received before the trespasses were committed and while they were being committed, is competent evidence upon the issue as to the amount of damages sustained; but the difference between these sums is not conclusive proof of the extent of the injury sustained.

The real issue is not how much less has the abutting owner actually received for the rent of the premises, but how much has the rental value of the property been diminished by the trespasses, and in determining this question the benefits, if any, to the premises, occasioned by the construction and operation of the road, must be taken into account.

Upon the trial of an action brought to recover past and fee damages to real estate caused by the construction, maintenance and operation of an elevated railroad

upon the street on which the plaintiffs' premises abutted, it was shown that the rent received from the premises prior to, and after, the construction and operation of the elevated railroad was practically the same. One of the occupants of such premises testified that they were annoyed by the dust, cinders and smoke that came from the road, and that the light was interrupted by the structure and by the moving trains.

The court found that the damage for past trespasses amounted to $300 per annum.

*Held,* that such finding was contrary to the weight of evidence.

The judgment provided that an injunction restraining the operation of the road should issue within sixty days after the entry of the judgment, unless the defendants should pay $6,000 on receiving a conveyance from the plaintiffs of the easements in question One-fourth of the title of the property in question was owned by infants.

*Held,* that such provision was inequitable; that the judgment might properly have provided that an injunction issue unless the defendants either paid the sum fixed, on being tendered a valid conveyance of the title, within the time mentioned, or acquired the title by condemnation proceedings within that time.

APPEAL by the defendants, The New York Elevated Railroad Company and others, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 10th day of October, 1893, upon the decision of the court rendered after a trial at the New York Special Term.

For more than thirty years prior to March 20, 1879, James B. Wright was the owner in fee of No. 304 Pearl street, on which date he died, having devised the premises in fee to Mary D. Corlies, Carrie L. Coolidge, Annie A. Mason and John Dunbar Wright, each taking an undivided one-fourth interest. On May 8, 1889, Carrie L. Coolidge died intestate leaving her surviving Henry Coolidge, her husband, and three children, Howard K. Coolidge, Sallie Coolidge and George G. Coolidge, her only heirs, who are minors. No administrator has been appointed for her estate. The lot is situate on the east side of Pearl street, is twenty-two feet and five inches wide on the street and a little more than ninety-five feet in depth. It is bounded on the west by Pearl street, the fee of which street is not in the plaintiffs. The lot is occupied by a four-story brick building fifty-one feet deep, which was erected about ninety years ago, and a one-story extension covering the rear of the lot. These premises are subject to two mortgages, one for $3,166.66 owned by Caroline E. Weaver, and one for $600 owned by Phœbe C. Wright.

The construction of the elevated road in Pearl street was begun in 1877, and was completed and put in operation in August, 1878.

This action was brought to recover damages for the trespasses upon the street easements since January 9, 1885, and for a judgment restraining future trespasses. The damages for the past trespasses were assessed at $300 per year from January 9, 1885, to June 6, 1893, the date of the trial, amounting to $2,580, and the value of the easements taken was assessed at $6,000, and the usual alternative judgment was entered.

*Davies, Short & Townsend,* for the appellants.

*George Zabriskie,* for the respondents.

FOLLETT, J. The plaintiffs are simply abutting owners, having no title to or interest in the bed of the street, nor any private rights therein except such as are incident to a lot abutting on a public street. The defendants insist that there is no evidence tending to sustain the finding (thirteenth) that the trespasses committed by the defendants before the trial damaged the plaintiffs to the amount of $300 per year, and they also insist that if there is any evidence tending to sustain this finding it is altogether against the weight of the evidence. The measure or rule for ascertaining the amount which abutting owners are entitled to recover for trespasses committed by the elevated roads on street easements has been held in many cases to be the diminished rental value of the abutting premises caused by the trespasses. The amount of rent received before the trespasses were committed, and while they were being committed, is competent and persuasive evidence upon the issue of the amount of damages sustained, but the difference between these sums is not conclusive or proof of the extent of the injury sustained. It may be that during the time when the acts complained of were committed the premises were not rented, or they may have been let for a nominal sum, or for a sum much more or much less than their actual rental value. The real issue is not how much less the abutting owner has actually received for the rent of the premises, but it is how much has the rental value of the property been diminished by the trespasses. In determining this question the benefits, if any, to the premises occasioned by the construction and operation of the road

must be taken into account. In the case at bar the plaintiffs' premises have been continually leased to the Hale Chair Company for twenty-five or thirty years before the trial of this action, and were occupied by that corporation as a chair store. During the fifteen years immediately preceding .the trial — 1878 to 1893 — the corporation (the lessee) paid an annual rental of $1,200 to $1,400. From 1878 to 1881 the annual rent was $1,200. The rent for 1882 is not stated, but it appears that it was not less than $1,200 nor more than $1,400. Since 1882 the rent has been $1,400 per year, so it appears that the plaintiffs have not received a less rent since the road was put in operation than before. The learned counsel for the defendants urges that this is proof that the plaintiffs were not injured by the trespasses complained of, and that at most they are entitled to but nominal damages. We do not think that this conclusion necessarily follows from the evidence. It may be that had the road not been built and operated in front of the plaintiff's premises their rental value would have been more than $1,400 per year. One of the occupants of the premises testified that they were annoyed by the dust, cinders and smoke that came from the road, and that the light was interrupted by the structure and by the moving trains. But aside from this evidence we find none in the record which shows or tends to show how much the real rental value of these premises was diminished between January 9, 1885, and June 6, 1893, by the trespasses of the defendants. No witness testified that the rental value of these premises was diminished by the operation of the road, and we think that the thirteenth finding is contrary to the weight of the evidence.

The judgment provides that an injunction restraining the operation of the road shall issue within sixty days after the entry of the judgment, unless the defendants should pay $6,000 on receiving a conveyance from the plaintiffs of the easements. It is true that the defendants are not bound to pay the sum fixed, but may acquire the property by condemnation, yet this provision should be formulated and founded on equitable principles. (*American Bank Note Co.* v. *N. Y. Elevated R. R. Co.*, 129 N. Y. 252; *Blumenthal* v. *N. Y. Elevated R. R. Co.*, 28 J. & S. 95.) One-fourth of the title is held by infants which cannot be conveyed, except by a special guardian, duly authorized by the court in a special proceeding instituted for

.that purpose. This provision in its present form is inequitable. It might have been provided that an injunction issue unless the defendants pay the sum fixed on being tendered a valid conveyance of the title, within the time mentioned, or that an injunction issue unless the defendants acquired the title by condemnation within the time mentioned.

The point is urged that the plaintiffs are not entitled to recover more than three-fourths of the damages which accrued prior to May 8, 1889, the date of the death of Mrs. Coolidge, but it was not then taken on the trial and need not be considered, as it will undoubtedly be obviated on the retrial.

The judgment should be reversed and a new trial granted, with costs to the appellants to abide the event.

Van Brunt, P. J., and Parker, J., concurred.

Judgment reversed, new trial granted, costs to appellants to abide event.