(82 Misc. Rep. 290.)

### HERENDEEN v. WILSON et al.

(Supreme Court, Special Term, Erie County. September, 1913.)

INDEMNITY (§ 15*)—CONTRACT—CONSTRUCTION—PERSONS SECURED.

Defendants, to induce B. to purchase stock in a corporation, contracted jointly and severally that one of them should save B. harmless from any liability as the holder of the stock, and should, within 60 days after demand, purchase from her at par all the shares and pay her therefor in cash. *Held*, that such undertaking was for the personal benefit of B., and was not enforceable by the administrator of B.'s legatee, to whom she bequeathed the stock.

[Ed. Note.—For other cases, see Indemnity, Cent. Dig. §§ 36–40, 42–47; Dec. Dig. § 15.*]

Action by James H. Herendeen, as administrator of the estate of Charles W. Edgerton, deceased, against Benton H. Wilson and others. Judgment for defendants.

Eugene L. Dominick, of Buffalo, for plaintiff.

Dirnberger & Augspurger and George A. Orr, all of Buffalo, for defendants.

BISSELL, J. On the 9th day of March, 1896, Susan Bradnack purchased 25 shares, at the par value of $100 per share, of the capital stock of Wilson & Co., a corporation of the state of New York.

The defendants Benton H. Wilson, Robert W. Wilson, Mollie D. Wilson, Lillie M. Wilson, Clara A. Wilson, together with Walt Wilson, now deceased, executed a bond to the said Susan Bradnack, by the terms of which they declared themselves bound to her, jointly and severally, in the sum of $4,000, subject to the condition—

"that if the said Benton H. Wilson shall well and truly indemnify and save harmless the said Susan Bradnack from any and all liability as the holder and owner of such shares of stock to be purchased by her, and shall, within sixty days after demand, purchase from the said Susan Bradnack, at the par value thereof, all of such shares of stock, and pay to the said Susan Bradnack the par value of such shares in cash, then this obligation shall be void, otherwise it shall remain in full force and virtue."

Susan Bradnack, the obligee, died, and devised and bequeathed the stock in question to one Charles W. Edgerton. Her will was admitted to probate, and Charles W. Edgerton came into possession of the stock, and on April 3, 1900, caused it to be transferred to his name on the books of the corporation. During the year 1904 Edgerton died, and letters of administration were duly issued to the plaintiff, and on the 6th day of June, 1911, the plaintiff caused a demand to be made on Benton H. Wilson that he purchase the stock according to the terms of the bond. The demand was refused, and the plaintiff now brings this action to enforce the obligation of the bond.

The question arising by demurrer to the complaint is whether or not an action can be maintained on this bond by the devisee of the obligee named therein. We think it cannot. The principles of interpretation applicable to contracts in general govern also in contracts of suretyship. (Baylies on Sureties, p. 111; Bennett v. Draper, 139 N. Y. 266, 34 N. E. 791, and cases there cited), subject, however, to the rule of strict construction in favor of sureties (32 Cyc. 73).

The intention of the parties must be gathered from the language of the instrument, and, if necessary, from the surrounding circumstances. Bennett v. Draper, supra; Baylies on Sureties, supra.

"The contracts of sureties are to be construed like other contracts, so as to give effect to the intention of the parties. In ascertaining that intention we are to read the language used by the parties in the light of the circumstances surrounding the execution of the instrument, * * * but when the meaning of the language used has been thus ascertained, the responsibility of the surety is not to be extended or enlarged by implication or construction, and is strictissimi juris." People v. Backus, 117 N. Y. 196, at page 201, 22 N. E. 759, at page 760.

These settled principles of construction must be borne in mind in examining the bond under consideration. The question may be thus stated: Was it the intention of the parties that the bond should be enforceable in the hands of the successors in title of the obligee? If so, why is it not so declared in the instrument? A strict construction of the language of the bond would indicate that when once the demand is made by Susan Bradnack, then the money shall be payable to her, "her executors, administrators and assigns," but although the obligee is named several times in the instrument, in no case is reference made to any successors in title. Why was this careful distinction made, except to express the intention of the parties? There are

no allegations of fact in the complaint from which it can be reasonably and fairly implied that a strict construction of the language of the bond fails to express the intention of the parties; and, in the absence of such allegations of fact, a strict construction must prevail.

It has been urged that this contract of surety must be distinguished from one of surety for the debts of another, that this contract of surety inheres in the property itself, which is subject to no changes or mutations which the bondsmen could not foresee, and that the bondsmen ought to give an actual added value to the property which was sold to the obligee, and that this inherent obligation ought to be enforceable, if not by her assigns, at least by her estate, and her successors by devise. It is further urged that, however hard the bargain, the defendants freely and voluntarily entered into it, and it is not the province of the court to relieve them of their obligations merely because they are hard. Whatever weight this argument may be entitled to, we do not think that it is controlling here. To adopt·this view would make it necessary to believe that the defendants had intended to enter into a perpetual obligation, and to enter into it under the following circumstances: Presumably when the stock was bought, it was, and for a long time thereafter continued to be, of great value, or of such value that the holder desired to retain it. This is evident from the fact that no application was made by the defendant under the terms of the bond during the lifetime of the obligee, Susan Bradnack, nor of her devisee, Charles W. Edgerton. And although the present plaintiff, as administrator, has had possession of the stock since 1904, he made no demand upon the bond until June 6, 1911, 15 years after the purchase of the stock. It must be presumed that the stock was of satisfactory value at the time of its purchase, and this would be reasonable ground for the defendants' willingness to insure the stock during the life of the obligee. But is it conceivable that these defendants would willingly undertake such surety against all the mutations of time and circumstance and into the hands of whomsoever the stock might come, without limit of time? We cannot believe such was their intention, and unless such intention can be proved, this theory must be unavailing, and the language of the instrument must remain our sole guide.

The case of Stillman v. Northrup, 109 N. Y. 473, 17 N. E. 379, is one of the authorities relied upon by the plaintiff, and, although containing several statements which, taken out of their context, would seem to be favorable to the plaintiff's contention, it does not, we think, control here. In the first place, in that case the obligee was the agent of the plaintiff, and therefore his rights in the transaction were the rights of the plaintiff. Even if that were not so, however, the case would not apply, for that was an action upon a guaranty of a mortgage securing a note. Surely it may be assumed that the assignability of a guaranty of a mortgage is in the contemplation of the parties in the absence of a plain statement to the contrary. In fact, in this same opinion Justice Earl says, in overruling the case of Smith v. Starr, 4 Hun, 123, which, by the way, is also relied upon by the plaintiff in this action:

"There is nothing personal about the guaranty of the payment of a mortgage, and it can be made so only by very express and plain language."

It does not seem necessary to point out that no such presumption of intention as to assignability exists in the present case as in the case of a guaranty of a mortgage.

The plaintiff also cites Everson **v.** Gere, 122 N. Y. 290, 25 N. E. 492, which is a case of a surety upon a promissory note. What was said above in respect to a bond and mortgage is, of course, even more potent in the case of surety on a promissory note. The very essence of a promissory note is assignability, and the parties to a contract of surety thereon are so conclusively presumed to have intended its assignability that nothing but the clearest statement to the contrary would relieve them of liability.

We think it unnecessary to discuss in detail the remaining cases cited by the plaintiff. In every instance the assignment of the contract of surety with the property was reasonably within the contemplation and intention of the parties. Such does not appear to have been the fact in the case at bar, and we are therefore of the opinion that the demurrer should be sustained, and judgment entered for the defendants with costs.