CYRUS PERRIN v. JOHN GARFIELD, RUSSELL C. GARFIELD, BENJ. PATCH, JOSEPH PATCH, AND HAYDEN PATCH.

*Adverse Possession. Prescription. Easement. Evidence.*

Where a right has been acquired by adverse enjoyment, it will not be defeated by asking for and obtaining a license for a continued use from the owner of the servient tenement; but this would be evidence tending to prove that the previous possession was not adverse, or under a claim of right.

In 1833 F. erected a mill about a mile from the defendants' pond and entered into the use and occupancy of a dam and flume, previously built by C. at the outlet of the pond to supply his mill which formerly stood near the site of F.'s mill, and continued so to use it for eighteen years. His mill was almost wholly dependent on the water obtained by means of the dam and flume for its supply. *Held,* that in the absence of proof that F., or C. or his successors ever procured any license to erect or keep up said dam, or ever acknowledged any title in any one, the county court were warranted in finding F.'s use adverse.

*Held* also, that the county court were warranted, under the circumstances of this case, in finding that the owners of the servient tenement had notice of such use.

The presumption of notice was not rebutted by the fact that the lands about the pond were wild and uncultivated until 1850.

*Held,* that the easement would pass with the mill in a sale of the latter notwithstanding its character and distance from the mill.

TRESPASS for removing a dam and flume. Plea, the general issue, and trial by the court, June Term, 1862, Caledonia County, POLAND, Ch. J., presiding.

The following facts appeared from the evidence. There is a small natural pond in the west part of Wheelock, from which runs a small

stream emptying into Lamoille River.  In 1821 one Cooke erected a saw-mill in Goshen Gore on said stream, about a mile below the outlet from said pond, and the next year erected a dam across said stream at the outlet of the pond, which raised the water in the pond about three feet.  He also built a flume and gate at the outlet so that the water from the pond could be drawn off at pleasure for the use of the mill.  The stream was so small and so little water raised by the dam at the mill that except in high water but little use could be made of the mill except for the supply obtained by drawing off the water accumulated by the dam at the pond.  Cooke and his successors kept up this mill and the dam at the pond for about ten years, when the mill was burned.  In 1833 one Foster erected a mill on the same stream about sixty rods above the Cooke mill on another lot in Goshen Gore, and went into the use and occupancy of the dam and flume at the outlet for his mill in the same manner Cooke had done. It did not appear that there was any contract or privity between Foster and the owner of the Cooke mill, as to the dam and flume at the outlet.  Foster kept up and used his mill for eighteen years, and during all the time kept up and used the dam and flume at the outlet in connection with it.  All the land about the pond during all this period up to 1850 was unoccupied and wild.  It did not appear that Cooke or his successors, or Foster ever procured any license or permission from any one to erect or keep up said dam or that they ever acknowledged any title in any one, nor was there any evidence of what right they claimed to keep up said dam except what may be legally inferred from their continued use and occupation of it for this period of time.  The town of Wheelock was chartered to Dartmouth College.  The defendant John Garfield purchased the lot on which the outlet of said pond is situated in the spring of 1850, and entered into possession of it in June, 1850, and the other defendants about the same time purchased and entered into possession of other lots bordering on the pond.

The defendants purchased their lands of one Loomis, and it was conceded that the title of Loomis was derived from the college, but when the college parted with the title did not appear.  On the border of the pond is a considerable quantity of low flat land, which is flowed and injured by raising the water of the pond three feet above

its natural level, and some of this flat land is included in the lots of each of the defendants. In 1850 or 1851 Foster sold and conveyed his mill to one Rufus W. Smith who went immediately into posses-sion of it, and occupied it for about two years, when he sold and conveyed the mill to the plaintiff who went into possession and has owned and occupied it ever since. About the time Smith purchased the mill, the dam or a portion of it had been carried out by the water. John Garfield, one of the defendants, testified as follows in relation to the rebuilding of the dam by Smith, and subsequently by the plaintiff, and the court found the facts to be as testified by him : " Smith, who owned the mill, came to me and wanted to buy the privilege of rebuilding the old dam. I refused to sell, but told him he might rebuild the dam, but when it became a damage to me he must remove it. He said that was all he wanted, and that before he began to rebuild it he would put the agreement in writing. I had not then cleared to the pond. Smith continued to occupy the mill two or three years and then sold to Mr. Perrin. Six years ago last October a freshet washed out the dam Smith had built. Perrin came to me for privilege to repair the old dam. I told him he might have the same privilege Smith had, with one exception, that he must draw the pond down the 1st of June and keep it down till after haying, so I could cut the grass on the pond. He lived up to the agreement for two years. He then claimed to hold by possession, and when he came on to repair the dam, I forbid him, so as to hold my claim on Loomis."

On the 27th of November, 1861, the defendants removed the flume and enough of the dam to allow the water in the pond to sink to its natural level and it has so remained ever since. The effect of this was to make the plaintiff's mill unable to run for most of the time since, and if the plaintiff cannot avail himself of the water of the pond by raising it as before, to render his mill nearly valueless.

Upon the above facts the court, *pro forma*, adjudged that the plaintiff was entitled to recover,—to which the defendants ex-cepted.

*Peck & Colby* and ———— *Cree*, for the defendants, maintained that the character of Foster's use and occupancy is not such as to give title. It is not found to have been with claim of right, but

Perrin *v.* Garfield et al.

simply *possession unexplained.* The affirmative is on the plaintiff to show title and he must couple the proof of occupancy with proof that it was under some claim of title. *Sargent* v. *Ballard*, 9 Pick. 254.

The possession must be *per patientiam domini.* The owner of the servient estate must have knowledge of it. *Hapgood* v. *Burt*, 4 Vt. 160; *Jackson* v. *Sellick*, 8 Johns. 202; 1 Ind. 129; 1 Hill Ab. 28; 2 *ib.* 52; Gale & W. on Easements, 75; *Gray* v. *Bond*, 2 Brad. & B. 670; *Betha* v. *Turner*, 1 Greenl. 115; *Wilson* v. *Storer*, 9 S. & R. 43.

From such entry by a naked trespasser no ouster of the true owner is presumed. Hence no right of action accrues to the owner and the statute bar does not begin to run. *Prop. Society* v. *Pawlet*, 4 Peters.

The mere right to erect a dam is in its nature temporary and expires with the decay of the dam, and its exercise is no evidence of claim of permanent right. *Hepburn* v. *Mcdonell*, 17 S. & R. 383.

Foster's right was never conveyed to the plaintiff. It was not appurtenant. And was not *claimed* by the plaintiff's grantor, Smith.

The right became extinct by the act of the plaintiff and his grantee in accepting a conditional privilege to build and maintain the dam after it was lost. 2 Hill Ab. 54; Gale & W. 265 & n.; 3 Kent's Com; *Williams* v. *Watkins*, 3 Peters 52; *Greeno* v. *Munson*, 9 Vt. 40.

It is only by analogy to statute of limitation that incorporeal rights are acquired. But the analogy is wanting in the case of Dartmouth College. And see *Prop. Society* v. *Pawlet*, 4 Peters 505; *David* v. *North*, 11 East, 372.

*B. N. Davis*, for the plaintiff, cited to the point that long continued possession affords presumptive evidence of title. *University of Vermont* v. *Reynolds*, 3 Vt. 558; *Knights* v. *Heaton*, 22 Vt. 480; 3 Starkie Ev. 915; *Johnson* v. *Ireland*, 11 East, 279; *Townsend* v. *Downer's Estate*, 32 Vt. 205; *Hazard* v. *Martin*, 2 Vt. 77; *Doolittle* v. *Holton*, 28 Vt. 819; *Sellick* v. *Starr*, 5 Vt. 255; *Ricord* v. *Williams*, 7 Wheat. 59.

This presumption arises after fifteen years uninterrupted enjoyment

in analogy to the statute of limitations.   *Shumway* v. *Simons*, 1 Vt.
53 ; Angel on Water Courses, p. 213, §§ 203, 204.

To the point that the possession of Foster was open and notorious
so as to put the owner of the land on his guard.   Angell on Lim.,
§§ 391–2, 395, 398, 400.

The title to the easement being in Foster the deed of the mill car-
ried with it all the necessary incidents for its use, and Smith took
Foster's right and the plaintiff Smith's.   Angel on Water Courses,
§ 153 *et seq.*

But it is said Smith asked leave of Garfield to rebuild the dam,
and also that Perrin got the same license, thereby acknowledging the
defendant's title.

This license so granted to Foster's grantees, might be a proper
consideration for the jury or the triers of the facts to weigh in re-
butting the presumption of a grant, and could only be weighed in
that light and by giving judgment for the plaintiff the court below
determined the evidence against the defendants, and it is not in the
province of this court to say the fact was improperly found.   Angel
on Water Courses, § 168, 173 ;  *Ricard* v. *Williams*, 7 Wheat. 106 ;
*Jackson ex Dem. White* v. *Ann Cary*, 16 Johns. 303.

PECK, J.   The defendants are sued for removing a dam and flume
at the outlet of a natural pond in Wheelock.   The dam and flume
was situate on the land of the defendant John Garfield.   He and the
other defendants were at the time of the trespass complained of
owners of land bordering on the pond, and the effect of the dam was
to raise the water in the pond about three feet above its natural
level and cause it to flow the low lands of the defendants to their
injury.

The question is whether the plaintiff or those under whom he
claims title had acquired an easement which justified him in keeping
up the dam for the use of his mill situate about three-fourths of a
mile below the dam, on a stream flowing from this pond.   The plain-
tiff's title or right to keep up the dam rests on adverse enjoyment of
the easement in connection with the use and occupancy of his mill.
In order to make out such right it is necessary for the plaintiff to
prove an uninterrupted adverse enjoyment of the easement for a pe-

riod of fifteen years by himself or his predecessors in title, or by both combined.

To make out the requisite period of time, the plaintiff can have no benefit from the user of Cooke, who erected the dam and kept it up from 1822 to 1832, when the mill Cooke erected in 1821 was burned, because the case shows that there was no privity between Foster, who erected the plaintiff's mill in 1833, and Cooke. But it appears that in 1833 Foster erected the mill now owned by the plaintiff on the same stream, about sixty rods above the site of Cooke's mill, on another lot in Goshen Gore, and went into the use and occupation of the dam and flume at the outlet in the same manner that Cooke had done, and that he kept up and used his mill for eighteen years, and during all the time kept up and used the dam and flume at the outlet of the pond in connection with it. In 1850 or 1851 Foster sold and conveyed the mill to Smith who occupied it for about two years, when he sold and conveyed it to the plaintiff who has owned and occupied it ever since. This shows an enjoyment of the easement a sufficient length of time, exclusive of the time that Cooke and his successors in title enjoyed it, to acquire a right coextensive with such enjoyment, if the user has the other legal characteristics necessary to gain the right. But it is insisted that the user was not adverse, or under a claim of right, and therefore no right was acquired. The leave granted by the defendant John Garfield to Smith, about the commencement of Smith's occupancy, is sufficient to destroy the adverse character of Smith's enjoyment; and the same is true as to the first two years of the plaintiff's enjoyment, up to the time the plaintiff asserted his right, and notified the defendant, as stated in the case. This interrupted the adverse enjoyment of the easement, and fifteen years did not elapse between the termination of Foster's user, and the notice by the plaintiff to John Garfield that he claimed the right in question. The question then must turn on the eighteen years enjoyment of the easement by Foster. It is claimed by the defendants' counsel that that was not adverse or under a claim of right. It is insisted that the leave asked by Smith about 1851, and by the plaintiff about two years after, and granted by John Garfield, destroys the adverse character of Foster's previous enjoyment of the easement. But if Foster had already acquired the right, this license

asked and granted has not the effect in law to defeat it. It is evidence tending to show that the previous user by Foster was not adverse or under a claim of right; but it is evident that the court did not so find the fact. This is evident from the statement in the exceptions, that " it did not appear that Cooke or his successors, or Foster, ever procured any license or permission from any one to erect or keep up the dam, or that they ever acknowledged any title in any one, nor was there any evidence of what right they claimed to keep up the dam, except what may be legally inferred from their continued use and occupancy of it for this period of time."

The general rule is that the enjoyment of an easement of this character is presumed to be adverse unless something appears to rebut that presumption. This is the general rule, when there is no express evidence that the user was accompanied by a claim of right, and no express evidence of a disclaimer of the right by the party enjoying the easement. There are some cases where the user is of such a character, and the circumstances attending it are such, as to show that it was a mere privilege enjoyed by leave of the proprietor of the servient tenement, express or implied, and not adverse. These cases are exceptions to the general rule, and peculiar in their character. This case comes within the rule and not within the exception. The fact that Foster incurred the expense of erecting the mill which, as the case shows, was almost worthless without this easement, tends strongly to show that he either had, or claimed the right, to the easement, or intended to enjoy it in defiance of the owner of the servient tenement. The court were warranted by the evidence in finding that the user of Foster was adverse, and it must be intended that they did so find, as this fact is necessary to warrant the judgment they rendered.

It is insisted that the case shows no notice to the owners of the servient tenement or lands, and that without proof of such notice no such acquiescence on the part of such owners is shown, as is necessary to the acquirement of an easement. The cases are rare and peculiar where proof of notice has been held necessary. The general current of the authorities is the other way. Whether they proceed upon the ground that notice is unnecessary, or on the ground that notice is to be presumed, it is not necessary in this case to de-

cide, because in this case, not only is there nothing to rebut the presumption of notice, but the circumstances are strong to show actual notice. The erection of a structure so obvious and palpable as a dam and flume, and the use of it such length of time by means of a gate at the outlet, to supply the mill, could hardly be otherwise than notorious in the vicinity, and would not be likely long to escape the observation of the proprietor of the lands on which they were situate and which were thereby injuriously affected. It is true the lands about that pond were wild and uncultivated till 1850, but this is not sufficient to rebut the presumption of notice. It is urged that Dartmouth College, the original grantees of the town of Wheelock, would not be likely to know of the erection of the dam, but it does not appear that the College owned the land at the time the dam was erected or while Foster or his successors were using it. The case shows that the defendants purchased their lands of Loomis about 1850, and that the title came originally from Dartmouth College ; but the case further states that it did not appear when the College parted with the title. For aught that appears, Loomis or some prior purchaser in the chain of title from the College, owned the lands during the whole period of the user, and lived in the immediate vicinity. Under these circumstances the court were warranted in finding the fact of notice, and it must be taken that the court did so find, if notice is material. We have therefore no occasion to decide what the effect would be if it appeared that the proprietor of the servient tenement lived at a great distance and had no knowledge of the erection of the dam. We are not prepared to say that such proof would have defeated the plaintiff's right to the easement. It is sufficient to say that we have no occasion to decide the question.

It is claimed by the defendants that as the rule of law giving a party a right to an easement by fifteen years' adverse enjoyment, is adopted from analogy to the statute of limitations under which title to real estate is acquired by fifteen years adverse possession, the exceptions in the statute applicable to the latter apply equally to the former. This question it is unnecessary to decide, because a party who relies on an exception in the statute of limitations must show such facts as bring the case within the exception relied on. It appears by the charter of the town to Dartmouth College, that the land

was granted to a public charitable use, and such lands are excepted from the operation of the statute ; but the College had the power of sale, and as already stated, the case shows that it did not appear at what time the College parted with the title. This exception in the statute did not apply to the land after the College sold and conveyed it. To entitle the defendants to the benefit of this exception it was incumbent on them to show that the College still owned the land at least during some portion of the fifteen years during which Foster was in the enjoyment of the easement, and by which user it is claimed by the plaintiff that he, Foster, acquired the right.

It is claimed also on the part of the defence that the easement is of such a character and so distant from the mill that it would not pass by a conveyance of the mill, and that therefore whatever right to the easement Foster had acquired, it did not pass by his deed of the mill to Smith, and by Smith's deed to the plaintiff. The case shows that the principal supply of water to run the mill was by means of this dam, and that by the privation of it the mill is rendered almost valueless. The general rule of law is, that whenever a party grants a thing he by implication grants whatever is incident to it and necessary to its beneficial enjoyment. The incident goes with the principal thing. This principle is especially applicable to water privileges in grants of mills and factories dependent on a flow of water for motive power. It is said this dam or easement is too far distant to pass by a conveyance of the mill. But the idea and definition of an easement incident to real estate granted, is a privilege off and beyond the local boundaries of the land or tenement conveyed. There is always a dominant and a servient tenement. It is not necessary that they should be contiguous to each other. The proximity of the one to the other is of little comparative importance in determining the question whether the easement passes by a conveyance of the dominant tenement. It depends rather upon the nature, character and purpose of the easement, its relation to the subject matter of the grant, its accustomed use in connection with it, and its necessity to the value, and to the beneficial and convenient use of the premises granted. There is a necessary connection between the mill and the stream and fountain of water which supply it, and which had long been used in connection with it. The

value of the mill depended mainly upon this privilege, so that without it the mill was almost worthless. The easement or privilege in question was necessary, if not indispensable to the use of the mill, was of great value to the grantee, and of no value apparently to the grantor after he had parted with the mill. Under these circumstances it is clear that the easement passed with the mill.

Judgment affirmed.