(42 Misc. Rep. 56.)

### HINDLEY v. METROPOLITAN ELEVATED RY. CO. et al.

(Supreme Court, Special Term, New York County.   December, 1903.)

1. ADVERSE POSSESSION—WHAT CONSTITUTES.

One claiming title by adverse possession must show an entry under claim of right adverse to the true owner, and open, exclusive, and hostile possession for 20 years to the knowledge of the true owner.

2. SAME—EVIDENCE.

The presumption of title by adverse possession may be rebutted by evidence.

3. SAME.

Where, pending a claim of adverse possession, the party recognizes the dominant title, his claim fails.

4. SAME.

An abutting owner sued an elevated road for damages to his easements of light and access, and proved that during the 20 years of its occupation the railroad company had admitted in its petition for correction of its franchise taxes that it must pay damages to abutting owners for their consent to its maintenance, and that it had settled with many of the abutting owners in plaintiff's neighborhood. *Held*, that such testimony was sufficient to defeat the claim of the railroad to have acquired the easements by adverse possession.

5. SAME—CONTINUOUS USER.

In an action by an abutting owner against an elevated railroad company for injuries to his easement of light and air, where defendant alleges adverse possession, a contention that the company's user was not continuous because during it the company was for some months in the hands of a receiver is not tenable.

6. SAME—INTERRUPTION.

An elevated company's adverse user as against abutting owners is not interrupted by alterations made by the company in the elevated structure necessitated by the continuance of the original use.

Action by John H. Hindley against the Metropolitan Elevated Railway Company and others.   Judgment for plaintiff.

Charles M. Cannon and Wilfred N. O'Neil, for plaintiff.

Julien T. Davies, Charles N. Morgan, S. Sidney Smith, and Frederick Allis, for defendants.

A. J. Skinner, E. W. Tyler, and W. G. Peckham, for intervening parties.

BISCHOFF, J.   The questions involved in this case, so far as they require critical consideration, relate to whether the defendants, by the construction of their railway in front of the plaintiff's premises in the year 1879, or prior thereto, and by the maintenance of such structure and the operation of trains thereon continuously during a period of more than 20 years preceding the commencement of this action, have acquired a prescriptive right as against this plaintiff, and without liability to him at law or in equity, to maintain such railway and operate the same in perpetuity so far as he is concerned; or whether the facts and incidents, as proved in the evidence offered on behalf of plaintiff, successfully meet the proof of the adverse character of the possession of the easements in controversy as shown by defendants, so as to defeat their claim of title by prescription.

The facts adduced by plaintiff and claimed by him to overcome the presumption of prescriptive rights in defendants in the easements are

the subordination of defendants' rights to plaintiff's as evinced by the settlement of various claims of abutting owners along the same line of road; the representations to the tax commissioners by defendants as to the outstanding claims of property owners on the same line for damages of the same character and embracing plaintiff's interests; representations made by defendants bearing upon the value of their franchises by deducting the assumed value of abutters' easements, including plaintiff's; the interrupted use of the easements during a receivership of the Manhattan Company for some months in 1881; certain alterations of the elevated structure, and the increase at times in the number and frequency of trains running over the structure.

To support his theory based on these facts, plaintiff has offered in evidence, among other things, the petitions of the defendants to the board of tax commissioners of the state of New York for the years 1900 and 1901, for the annulment or reduction of taxes on their franchise, wherein the petitioners directly represent that the franchise, authority, or permission to construct, maintain, and operate their railway was granted by the Legislature and the municipal authorities of the city of New York, and say it differs from "the franchise, authority, or permission granted to the street surface railroad companies in that it is subject to the obligation of making payments for damages to abutting owners." One petition offered in evidence also alleges that the Manhattan Elevated Railway Company has paid out about $12,500,000 in settlement of claims against it for damages sustained by abutting property owners—

"Of which about one-third has been paid out for rental damages, and about two-thirds, or $8,000,000, has been paid out for fee damages, or in settlement of the permanent rights of abutting property owners to interfere with the construction, maintenance, and operation of the elevated railroad. All of these damages have been paid out with respect to lands situated in the borough of Manhattan. Settlements have been made by the Manhattan Railway Company with the owners of about 50% of the land abutting upon its line of railroad. With respect to these claims for damages, on the assumption that as favorable settlements will be made in the future as have been made in the past, about $8,000,000 more will necessarily have to be paid to obtain the unobstructed right to exercise the franchise of constructing, maintaining, and operating elevated railroads in the streets of New York in the borough of Manhattan. The special franchise of the Manhattan Road in the borough of Manhattan will not have been fully purchased or fully owned until all of these settlements have been made, for the reason that each property owner, in exercising his right to enjoin the operation of the road in front of his premises, necessarily impedes the exercise of the franchise of the road."

This petition also makes a further acknowledgment of the position of defendants toward the abutting property-owners—that is, the remaining 50 per cent. thereof whose claims have not been settled, necessarily including plaintiff's—as follows:

| | |
|---|---:|
| "Cost of replacement of the structure.................... | $18,936,285 32 |
| Value of outside real estate........................... | 5,190,575 00 |
| Cost of rolling stock, supplies, tools, etc................ | 4,850,000 00 |
| Damages ............................................ | 8,000,000 00 |
| Amount to be paid for land damage..................... | 8,000,000 00 |
| | $44,976,860 32 |

"It is proper to deduct in this calculation the sum of $8,000,000, that remains to be paid for land damages, for the reason that the earnings are appraised

the same as they would be had that sum been paid, and they are the result of the unobstructed exercise of the franchise to operate the roads, and the payment of that additional $8,000,000 will give the Manhattan Railway Company the title to the unobstructed franchise which it is in fact using with like effect as if it had the consent of every abutting property owner so long as no abutter enjoins it and prevents it from operating its railroad."

Plaintiff also offered in evidence proof that defendants had instituted condemnation proceedings against a large number of property owners along Sixth avenue for the condemnation of their easements therein, both before and after defendants had operated their road for 20 years, and to the effect that defendants, both before and after they had run their road for 20 years, had voluntarily settled with various property owners along their route on Sixth avenue from Carmine street to Fifty-Ninth street. The premises in controversy are situated on the westerly side of Sixth avenue, between Forty-Sixth and Forty-Seventh streets, at which point defendants' elevated railway has been maintained and operated since the year 1879, and of which there is no dispute.

At the outset of the consideration of the proposition urged by the defendants—that it has by prescription an absolute interest as against plaintiff in the easements of light, air, and access appurtenant to his premises—it is well to consider the nature of their right as based upon the theory of prescription, and with reference to the limits within which such right may be invoked, and it is well, also, in such consideration, to bear in mind the distinctions between statutes of limitation and those from which incorporeal rights may be acquired by adverse possession, or, more strictly speaking, as in the case at bar, by prescription. A statute of limitation creates no new rights; it is a barrier against a remedy; it is a shield, and not a sword. Adverse possession may be both a sword and a shield; substantive rights may be built upon it; and by fiction of law at least it is a source of title upon which remedies may be enforced and substantial rights asserted. Hence a statute of limitation, considered as a statute of repose, destroys or extinguishes property rights, while adverse possession creates such rights, whether considered by way of fiction or otherwise. So long as the adverse user has not begun and continued in trespass, or by invasion or assertion of some antagonistic right, it is not adverse, is subordinate to the true owner, and can never ripen into a vested interest until, counting from the period when the adverse possession—i. e., that which is essentially antagonistic to the owner—sufficient time has elapsed by the statute provisions in force to presume a grant; for, as title by adverse possession is based upon the fiction of a presumed grant, such fiction must fall before evidence that, within the statutory time as pleaded, the possession has been concededly subordinate to the true owner. It is only pleas of prescriptive titles, having their inception at the date of the presumed grant and which have ripened by a continuous adverse holding for the full statutory period, that may be successfully pleaded as a bar; for by no logic or fiction of the law can a grant be presumed to begin from a date earlier than when the adverse possession or claim began. Hence, so long as the possession of a claimant is concededly subordinate to that of the owner, his possession is that of such true

owner, is not adverse, and, though it continue forever, would not ripen into a title. It were as well to say that a continuous tenancy might transfer, by lapse of time, the title of the fee to a tenant from the landlord.

Hence the reasoning of the Court of Appeals, per Finch, J., in American Bank Note Co. v. New York El. R. R. Co., 129 N. Y. 252-260, 29 N. E. 302, may well be approved, wherein he says, treating of a similar point:

> "The question, therefore, is whether they obtained title to any part of the plaintiff's incorporeal right in the street, and that again resolves itself into the inquiry whether the possession of the defendants and their predecessors was continuous and was or was not adverse. Ordinarily, that is a question of fact. It may be conceded that where the undisputed proof shows that the party asserting title entered upon the premises under a claim of right adverse to the true owner, and retained an open, exclusive, and hostile occupation for twenty years, to the knowledge and palpable injury of such owner while not incapable of vindicating his rights, and there are no other or contradictory facts, a presumption of title will arise, and the court should find in accordance therewith. But the presumption is not conclusive as against other and further facts. It serves only to shift the burden of showing the true character of the possession to the owner. And where there are other facts, tending to justify a different inference and leading fairly to a contrary conclusion, they also are to be taken into the account, and the question becomes, if not wholly one of fact, at least a mixed question of law and fact, depending more or less upon the circumstances proved."

This view of the law makes it essential, where a plea of adverse possession, or of title by prescription, which is in substance the same, is interposed, to show the entry upon the premises to have been under a claim of right adverse to the true owner, and to have been retained in an open, exclusive, and hostile manner for 20 years to the knowledge and palpable injury of such owner while not incapable of vindicating his rights, and no mere fiction can supply the want of such evidence and thereby defeat a claimant's rights. While the law regards prescriptive rights as ones of repose, and refuses to disturb them, once fixed, it always requires clear proof that the facts of the case establish such rights; and, indeed, the mere presumption of a grant is easily overcome, for, as said by Van Brunt, P. J., in Mayor v. Mott, 60 Hun, 423, 15 N. Y. Supp. 22:

> "In order that a possession shall be adverse to the real title there can be no recognition thereof. As is seen in the cases cited, the moment that an outstanding title is recognized, even by negotiation for its purchase, it is an admission of the right of the real owner to possession, and the possession of the party in possession ceases to be adverse."

What is said by Justice Van Brunt of adverse possession may well be applied to prescriptive rights. While the two are essentially the same in most particulars, the main differences are with respect to their enjoyment and occupation. "Prescription" is the term usually applied to incorporeal hereditaments; "adverse possession" to lands; and, as it is for the interference with incorporeal hereditaments of the plaintiff by the defendants that this action is brought, the rights of the defendants in the premises sought to be enforced are prescriptive ones relating to the easements enjoyed by the plaintiff, and undoubtedly infringed by the defendants, if not acquired by them through their adverse user for the statutory period of 20 years.

These easements which have been invaded by the defendants are positive or affirmative ones, resting upon a physical entry and use of the servient tenement.   This seems to be the conclusion of the Court of Appeals in the Story Case, 90 N. Y. 122, 43 Am. Rep. 146, and the Fobes Case, 121 N. Y. 505, 24 N. E. 919, 8 L. R. A. 453, wherein it expressly holds that the elevated structure constitutes a physical occupancy of a part of the street, and a "permanent, total, exclusive, and absolute appropriation" of the abutter's easements, as well as a "total and exclusive use thereof"; and it seems that the structure and operation of the elevated railroad constitutes an actual occupancy and possession of the abutter's easements, and for the physical ouster and occupancy thereof plaintiff has brought this action as constituting a continuing trespass.   The general proposition, therefore, being conceded, that where the undisputed proof shows that the party asserting title entered upon the premises under a claim of right adverse to the true owner, and retained an open, exclusive, and hostile occupation for 20 years to the knowledge and palpable injury of such owner while not incapable of vindicating his rights, the serious question in the case at bar is, not whether the elevated railroads may acquire such prescriptive rights to the easements of light, air, and access by prescription, but whether, under the evidence in the case at bar, it appears that, in the language of Judge Finch in the American Bank Note case, "there were facts and incidents which challenge the adverse character of the possession and its continuity as unbroken or unchanged."   Long ago Lord Mansfield declared that a grant may under certain circumstances be presumed, even though the court does not really think a grant has been made (Eldridge v. Knott, Cowp. 214) ; but our courts also held long ago that it remained then to be decided whether a right by grant or otherwise could be presumed when it plainly appears that it never did exist (Parker v. Foote, 19 Wend. 319).

The learned counsel for the defendants concede the full extent, to which the law will go in presuming a grant, to be as stated by the court in Cahill v. Palmer, 45 N. Y. 484–485, wherein our court of last resort says that :

"When the possession is actual, exclusive, open, and notorious under a claim of title adverse to any and all others for the time prescribed by the statute, such possession establishes title.   To uphold it a grant by the true owner to such party may be presumed."

The history of the growth of prescriptive rights will show that in the early cases immemorial possession, and later for 20 years, was held conclusive on the question of presumption of title as a matter of evidence—that is, once immemorial possession, or for 20 years under the statutes when enforced, was shown, the presumption of grant could not be defeated; but under the modern and more rational theory it is held that this presumption may be rebutted by actual evidence of the facts, but it is requisite to support, by evidence of adverse possession, the fact that such was hostile, exclusive, continuous, and with the acquiescence of the owner of the servient estate.   If these facts be shown, it is still the duty of the court to adopt the presumption of a grant, and thus establish a title fully as conclusive as a

prescriptive title based on immemorial possession under the ancient practice. Washb. Ease., *70–*123, 3; Washb. Real Prop. *40, *41; Terry v. Smith, 47 Hun, 336; Ward v. Warren, 82 N. Y. 265; Nicholls v. Wentworth, 100 N. Y. 461, 3 N. E. 482; Lewis v. New York & H. R. R. Co., 162 N. Y. 223, 56 N. E. 540; Baker v. Oakwood, 123 N. Y. 25–30, 25 N. E. 312, 10 L. R. A. 387; Barnes v. Light, 116 N. Y. 34, 22 N. E. 441.

In American Bank Note Case, 129 N. Y. 262–263, 29 N. E. 302, the Court of Appeals says:

"We have described that entry as a trespass, as an invasion of the rights of the adjoining owners, and as an exclusive and injurious seizure of their incorporeal rights in the street. The possession which followed we have declared to be a continuous wrong, for which all the time and every day damages accrued and should be rewarded. That such an entry may be adverse and sufficient to initiate a possession which, at the end of twenty years, would ripen into a title, would seem to be quite clear."

In the Lewis Case, the court said (162 N. Y. 223, 56 N. E. 546):

"Prescription rests upon the presumption of a lost deed, after adverse use and enjoyment for twenty years, which has been adopted by the courts as the prescriptive period from analogy to the statute of limitations. Woodruff v. Paddock, 130 N. Y. 618, 624, 29 N. E. 1021; Snell v. Levitt, 110 N. Y. 595, 18 N. E. 370, 1 L. R. A. 414; Nicholls v. Wentworth, 100 N. Y. 455, 3 N. E. 482; Ward v. Warren, 82 N. Y. 265; Parker v. Foote, 19 Wend. 309–312; Goddard on Easements, 90; Washburn on Easements (4th Ed.) 123; 19 Am. & Eng. Encyc. of Law, 7; Jones on Easements, § 160; Gerard on Title, 745. What the primary owner loses by his laches the other party gains by continued possession without question of his right. Campbell v. Holt, 115 U. S. 620–623, 6 Sup. Ct. 209, 29 L. Ed. 483. The adverse use must be of the same character and duration as the adverse possession required to give title to real estate, which has already been considered. If the presumption as to a lost deed may be rebutted, still it presents a question of fact which, in this case, has been determined in favor of the defendants."

This leads to a consideration of the nature of the easements of light, air, and access which an abutting owner of property has in the public street in front of his premises. It would seem that these easements extend beyond and are larger than the mere portion of the street directly in front of the abutter's premises. It is more reasonable to assume that these easements extend over the length of the street in front of the premises, or at least to a reasonable extent in every direction.

In this connection the Court of Appeals in Burbank v. Fay, 65 N. Y. 57, where one abutting owner along a canal which was a public highway sought to obtain title to a portion of it by prescription, says:

"The right extends to the entire territory within its limits, and consequently no one can be deprived of the enjoyment of such an easement by any adverse or unlawful use or occupation of the way by an individual for his own private purposes."

And in the Kearney Case (Super. N. Y.) 13 N. Y. Supp. 608, the reasoning of the court justifies the conclusion that defendants are not warranted in assuming that plaintiff's easements exist merely in front of the premises owned by him:

"It was also argued that the court erred in admitting testimony as to light being cut off from plaintiff's premises by shadows cast by the station of the

defendant, which was not in front of the premises, and was on the avenue twenty-five feet south of them. The ground taken is that the easements of the plaintiff are such as exist only directly in front of the premises, and are a burden upon the part of the street directly in front, and not to any extent on the street north or south. This does not seem to coincide with the practical use of a street in tending to benefit property upon it.  ❋  ❋  ❋  The alternative would be that the street might be closed without compensation, provided the part immediately in front were not taken. There was no error in the admission of the testimony."

While it is difficult to define the precise limits of the easements of light, air, and access of abutting owners upon public streets, it would seem that all abutting owners have a community of interest in these easements coterminous with the streets they occupy, though so commingled that equity cannot say with precision where one begins and the other ends. The relation is analogous to the relation of tenants in common of a given piece of property, where either would have the right to rely upon representations made by one claiming a, prescriptive right over the property, and where the admissions to the one, brought to the knowledge of the other, would be equally effectual as to both. The franchise of the defendants in a given street is best considered as a unit, although it affects numberless persons, and from each of which it must derive, by purchase or otherwise, these easements. Hence the evidence offered by the plaintiff to rebut the presumption of the grant to the defendants, of voluntary settlements with other persons upon the line of the road, and condemnation proceedings, as well within the period of limitation as without, do bear, and materially, upon the question of acknowledgment by the defendants of the superior rights of plaintiff. The rule is familiar that the adverse holding must be antagonistic to the real title, and there can be no recognition whatever thereof, for, the moment the dormant title—in this case the abutter's—is recognized, even in the slightest way, the adverse possession which might have ripened into a title ceases to be adverse and falls; and in the case at bar it seems to me it is clearly shown that defendants, both during the running of the first 20 years of their road and thereafter, have recognized the outstanding title or interest in the plaintiff as indicated by the admissions in their petitions to the board of tax commissioners, by the proof that defendants, before and after the operation of their road for 20 years on Sixth avenue, made voluntary settlements with property owners along its route on' said avenue, by condemnation proceedings taken by defendants, both before and after the operation of its road for 20 years, to acquire the easements of property owners on said avenue, and it is by no means clear that the admissions in the answer do not support the plaintiff's theory on this point.

Judge Finch, in the Bank Note Case (pages 268, 269, 129 N. Y., page 306, 29 N. E.), places considerable emphasis upon the attitude of defendants in instituting proceedings to condemn plaintiff's easements in the street, and he says:

"But there is still another fact to be considered. After the expiration of twenty years from July 2, 1868, and during the pendency of the present action, the defendants instituted proceedings to condemn the plaintiff's street rights. There is no question over the admissibility of the evidence, for the defendants themselves gave the proof. This proceeding was necessarily a solemn and

formal admission of record of title in the plaintiff to the incorporeal rights in question. It is to be granted that such an admission, made after the prescriptive right had been acquired, would not serve to destroy it. But the admission is evidence, reflecting back on what has occurred, and tending to show what the real character of the possession claimed to be adverse in truth was. Perrin v. Garfield, 37 Vt. 304. The company knew what its own possession and that of its predecessor had actually been, and it is hardly conceivable that, if such possession had been adverse either in fact or in intention, an admission would be formally made of the ownership in the easements outstanding in the abutter."

And in Colvin v. Burnet, 17 Wend. 564–568, it is said that:

"It is well known that a single lisp of acknowledgment by the defendant, that he claims no title, fastens a character upon his possession which makes it unavailable for ages. No matter that, in the language of these pleas, he and those under whom he claims may have holden peaceably, and without the hindrance, molestation, or even claim of the owner."

Of course, a request for permission, or an offer, to purchase, made after the expiration of the full prescriptive period, is not fatal (Watkins v. Peck, 13 N. H. 360, 40 Am. Dec. 156; Weed v. Keenan, 60 Vt. 74, 13 Atl. 804, 6 Am. St. Rep. 93); still it tends to show that the use during the prescriptive period was not adverse (Perrin v. Garfield, 37 Vt. 304; Tracy v. Atherton, 36 Vt. 503; American Bank Note Co. v. New York El. R. Co., 129 N. Y. 252, 29 N. E. 302).·

Aside from the alleged interruption of the use of the easements during the receivership of the Manhattan Company for some months in 1881, the alterations of the elevated structure, and the increase at times in the number and frequency of trains running over the structure, I am satisfied that the evidence offered on the part of the plaintiff has successfully met and overcome the proof of the adverse character of the possession of the easements in controversy as shown by the defendants, so as to defeat their claim of title by prescription, and that this evidence clearly characterizes the holding of the defendants as in subordination to, and recognition of, plaintiff's rights, and not continuously adverse or antagonistic thereto for the statutory period necessary to presume a grant.

So far as plaintiff's contentions of the interrupted use of the easements by the receivership of the Manhattan Company, and the alterations of the structure and increase in number and frequency of trains, is concerned, I am of opinion that they are without merit. It is asserted that the Manhattan Company's user was not continuous, because interrupted by a receivership for some months in the year 1881. As a matter of fact, there was a receivership during some months, as claimed. As to this, however, it may be said that there was in fact no interruption in the user, nor in the defendants' title to the structure. The receiver was a custodian merely, and continued the operation of the road under the lawful authority which the Manhattan Company possessed, and not otherwise. The possession was, therefore, continuous, and in any aspect there was no abandonment of the user by these defendants sufficient to conclude them against a prescriptive right, for there was no volition exercised in the technical nonuser during this period. See 22 Am. & Eng. Encyc. of Law (2d Ed.) 1207; White v. Manhattan R. Co., 139 N. Y. 26, 34 N. E. 887. As to the alterations and increase at times in the number and frequency of trains

running over the structure it may well be said that the character of the use was not changed, and the alteration of the structure was not of such a nature as would defeat a prescriptive right of title, if otherwise complete.    There is no doubt that a substantial change in the form or position of the structure itself would constitute a fatal interruption of the use the point having been ruled in the Bank Note Case supra, where the position of the road was changed and an additional burden was imposed through the change of motive power from cable to steam propulsion.    Here, however, the structure has remained unchanged with the exception of such slight alterations as ordinary repairs necessitated in the continuance of the original use, and the evidence does not justify the claim that these alterations could amount to a substantial addition to the structure itself.    See 3 Kent's Comm. 443;  Belknap v. Trimble, 3 Paige, 605.   Nor do I think that the defendants were to be restricted to the running of a uniform number of trains, day by day or hour by hour, during the period.   As was said by the court in the Bank Note Case, 129 N. Y. 266, 29 N. E. 302, "In all cases of rights by prescription, the right acquired is measured by the extent of the use, and that in turn by the purpose of the user." The scope of the original possession by the railroad, and the purpose with regard to the use of the abutter's easements, were defined by the charter under which the operation of the road was commenced, and which is to be looked to as indicating the claim of right which was at the inception of the possession.   Reformed Church v. Schoolcraft, 65 N. Y. 134.   The purpose of the user and the general nature of the use were continually within the claim of right as thus defined, but, as above pointed out, in subordination to plaintiff's right; and, the nature and purpose being uninterrupted during the period of alleged prescription were such prescriptive rights not defeated by the evidence, the principle which opposes the "tacking of independent or different uses for the assertion of a continuing use" would not apply.

It follows from the foregoing that the plaintiff is entitled to judgment; and as I find damages to the fee as well as loss of rents to him, the former in the sum of $3,000, and the latter at the rate of $240 per annum from July 20, 1895, judgment should be entered accordingly in the usual form.

Judgment accordingly.