JOHN H. HINDLEY, Respondent, v. MANHATTAN RAILWAY COMPANY and METROPOLITAN ELEVATED RAILWAY COMPANY, Appellants.

*Eminent domain — entry on a street by an elevated railroad under a claim to occupy public rights therein — when it becomes adverse to the private rights of abutting owners — the recognition of the rights of any owner on the line is a recognition of the rights of all — it prevents the acquiring, by prescription, a title as against them — effect of an extension of user, after entry under a grant defining the rights granted — what is essential to an adverse possession.*

The entry which the elevated railroad companies, in 1879, made upon Sixth avenue in the city of New York with the consent of the local authorities and pursuant to a legislative grant, having been made under the claim that it involved only an occupation of the rights of the public in the street and did not constitute an invasion of the private rights of the abutting owners in the street, was not adverse to such abutting owners and could not be made the basis for a title by prescription to the rights of the abutting owners in the street.

The occupation of the street by the elevated railroad companies did not become adverse to the abutting owners until October, 1882, when it was adjudged that such occupation constituted an invasion of the rights of the abutting owners.

The claims of the railroad companies, being based upon a hostile use of the street extending the whole length of their road, and not upon a hostile use asserted against particular abutting owners, when the railroad companies recognized the title of one abutting owner to property rights in the street, by voluntarily paying such owner for the use and occupation of such property right, they thereby effectually disclaimed any prescriptive right in the street for the entire length of their road.

The general rule is that where a party enters under a grant his right is strictly limited to the property conveyed by its terms. He may, in fact, extend his occupation and use of property beyond the limits of the grant, but such occupation and use will never ripen into a title, no matter how long continued, to the property outside the terms of the grant, unless such entry, use and occupation is asserted by some act independent of the grant.

The question as to what will constitute a title by prescription is ordinarily one of fact, although it may, in given cases, become one of mixed law and fact.

In order to initiate a title by adverse possession, there must have been an adverse entry.

APPEAL by the defendants, the Manhattan Railway Company and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 11th day of February, 1904, upon the decision of the court, rendered after a trial at the New York Special Term, granting an injunction.

*Julien T. Davies*, for the appellants.

*Charles F. Brown*, for the respondent.

HATCH, J.:

This is the usual action in equity brought to secure an injunction perpetually enjoining and restraining the defendants from the maintenance and operation of a railroad in front of the plaintiff's premises on Sixth avenue in the city of New York or in the alternative to have damages assessed. No question is raised respecting the amount of the damages which have been awarded in the judgment. The defendants, however, deny any liability to the plaintiff, under the claim that they have acquired a prescriptive right and title by user for more than twenty years of the plaintiff's property rights in the street where they operate their railroad.

The trial court in making disposition of this case has written an able and learned opinion covering nearly every question involved ·in this controversy. (*Hindley* v. *Metropolitan El. R. Co.,* 42 Misc. Rep. 56.) We might well affirm this judgment upon that opinion, but in view of the argument which has been had and the importance of the question a few additional observations will not be out of place. The entry upon Sixth avenue in 1879 by the defendants was under a legislative grant, which fixed and defined the rights which they took. However invisible the line between the public and the private right, nevertheless, it is clear that the entry was made under the consent of the local authorities pursuant to the legislative grant, and the occupation of the street thereunder was claimed by the defendants to· be limited to the public right in the street; that they did not invade any property right of any character possessed by the abutters upon the street and never so intended. In fact they did invade the property rights of abutting owners. The defendants, however, denied that they invaded such rights and stood squarely upon the terms of their grant and the power of the local authorities and the Legislature to make it. In the beginning, therefore, there was no claim of right to use or take any property right whatever of the abutting owners. It has been argued with force by the learned counsel for the plaintiff that, having entered under the grant and making no other claim to title or right to use the street beyond the limits of the authority thus conferred, no prescriptive right could be obtained in the incorporeal rights of abutting owners, for the reason that none was asserted to exist when the defendants entered into occupation and use. It is claimed on the contrary that it was settled by the Court of Appeals in *American Bank Note Co.* v. *N. Y. E. R. R. Co.* (129 N. Y. 252) that title or right by prescription could be acquired by an entry under this grant and that an open, notorious adverse user of the incorporeal rights of the abutting owner for twenty years would ripen into a title by prescription. It must be admitted that the language used in that case is clearly susceptible of such construction. This holding is based upon the view that " neither the company nor individuals along the line knew that this title was imperfect because there were incorporeal rights in the street, belonging not to the public, but to the abutting owners, and yet the property in fact existed and the company took it without

right, but it must be admitted, under color of title and claim of right, since the property taken was within the apparent and possible boundaries of the grant under which the entry was made and for a time was supposed by both parties to be in fact within its actual and legal boundaries." The discussion upon that subject, however, was *obiter*, as the decision was put upon the ground that the defendants' structure had been changed within the alleged prescriptive period and, therefore, that no title by prescription had been established. . The learned judge who wrote therein said that the entry under the grant was of such a character that there was. " no conscious or intended adverse holding by the company and no conscious or intended submission by the plaintiff." In his general observations it is stated that the entry and possession which might ripen into title must be of such a character as to constitute it " a general claim of right adverse to all others." It is a little difficult to see how under a grant, which only authorized an occupation and use of the public rights, a claim of such rights alone could be held to be an adverse claim of occupation of the private property right of the abutter. The general rule is that where a party enters under a grant his right is strictly limited to the property conveyed by its terms. He may, in fact, extend his occupation and use of property beyond the limits of the grant, but such occupation and use will never ripen into a title, no matter how long continued, to the property outside the terms of the grant, unless such entry, use and occupation is asserted by some act independent of the grant. The reason for this rule lies in the fact that the adverse occupation and user of property outside of the grant was never initiated; the entry being thereunder the right of use and occupation is limited by its terms. I am not able to see any distinction between the grant in this case and in any other. Here the grant was of the public right; use and occupation of the abutter's property rights were outside its terms and as there was never any assertion of any other adverse claim to the use and occupation of such property, no title could be acquired to it by mere acts of occupation and user. Reliance is also placed upon the case of *Lewis* v. *N. Y. & H. R. R. Co.* (162 N. Y. 202). If this case is now to be regarded as authoritatively stating the law it does not support the contention of the appellants. Therein the entry was made upon the street in 1835. At that time Fourth avenue in

front of the property involved in that case was not opened and it so remained until between 1850 and 1853, when it was opened and extended and an award of damage was made to the railroad company then in occupation of the street for such opening upon either side of its tracks. The railroad company also held a deed conveying title to that portion of the street which it occupied. This occupation from the beginning was, therefore, under claim of title to the street. In the subsequent decisions which have been had respecting property rights of different parcels upon such street, by reason of the viaduct which has been constructed and made necessary to carry the railroad over the changed grade at the Harlem river, it was held that such construction was made by the command of the State and that the railroad company incurred no liability by obeying such command, even though it infringed upon the incorporeal rights of abutting owners. (*Fries* v. *N. Y. & H. R. R. Co.*, 169 N. Y. 278.) There is nothing, therefore, in these cases which establishes as a conclusive rule of law that title by prescription to the incorporeal rights of abutting owners upon the street where the railroad is constructed can be acquired by prescription. Other cases in this State and in other jurisdictions have been called to our attention, bearing with more or less force upon the subject. We do not find it necessary, however, at this time to determine such question, as it is not essential in the disposition of this case. We, therefore, express no opinion thereon. It was said by Judge Finch in *American Bank Note Co.* v. *N. Y. E. R. R. Co.* (*supra*) that to obtain title by prescription the undisputed proof must show " that the party asserting title entered upon the premises under a claim of right adverse to the true owner and retained an open, exclusive and hostile occupation for twenty years, to the knowledge and palpable injury of such owner, while not incapable of vindicating his rights, and there are no other or contradictory facts, a presumption of title will arise and the court should find in accordance therewith." In the learned opinion below the question of what will constitute a title by prescription is stated and supported by authority. This question is ordinarily one of fact, although it may in given cases become one of mixed law and fact. In order, however, to initiate such a title there must have been an adverse entry. There was certainly no such entry in this case prior to October 17,

1882. On that day the case of *Story* v. *N. Y. El. R. R. Co.* (90 N. Y. 122) was decided. It clearly appears from the discussion therein that the defendant up to that time did not claim that it had occupied or invaded any of the incorporeal rights held by the abutting owner. On the contrary, it repudiated the claim that it had entered thereon, either adversely or otherwise. Its position then was that its occupation was limited solely to the public right. After the decision in that case, by which it was established that the use of the street did invade the private right, the defendants recognized such invasion and made compensation to abutting owners, sometimes compelled by actions, resulting in judgments, by condemnation proceedings and by voluntary recognition of liability and payment. From time to time the defendants have sought to escape the legal effect of the decision in the *Story* case, but without success. (*Lahr* v. *Met. El. R. Co.*, 104 N. Y. 268; *Abendroth* v. *M. R. Co.*, 122 id. 1.) This action was brought in July, 1901. The period, therefore, within which the prescriptive right could be obtained had not run at the time when this action was begun, for within the twenty years the defendants were strenuously denying that they were in occupation or used the plaintiff's property rights. We have carefully examined the evidence in order to discover when the adverse claim was first asserted and are unable to find any affirmative act upon the part of the defendants when it can be said that they initiated a claim of title to a prescriptive right. It is true that the railroads were in notorious occupation of the street; that they operated their trains thereon and that they claimed the right so to do, but these acts, of themselves, were not inconsistent with a recognition of the plaintiff's incorporeal rights in the street. During this period the plaintiff could not obtain a judgment of ouster of the railroads from the street, as they were legally there under their charter rights. He could not maintain ejectment because there was no right upon which the judgment could operate and the sheriff would be unable to execute a judgment placing him in possession of the right which he was entitled to enjoy. The abutters' remedy seems to have been in an action to recover damages for the trespass, or by suit in equity to restrain the operation until compensation was made, but during this period of time the defendants recognized the property rights of the abutting owners and made compensation therefor to many. As late

as April 15, 1898, they voluntarily settled for the property right of 812 Sixth avenue, in the immediate vicinity of the plaintiff's property. On September 20, 1899, there was an action pending, brought by John W. Hazlett of 502–504 Sixth avenue against the defendants to recover damages for the invasion of his property rights. The defendants therein set up the Statute of Limitations. After the commencement of the action the case was voluntarily settled by the defendants. These settlements show that down to a very recent period the defendants still recognized the property rights of abutting owners at various places upon Sixth avenue, and one at least in the immediate vicinity of the plaintiff's property. It is said, however, that these admissions did not destroy the prescriptive right which had been acquired, as there was no community of interest " between the abutting owners with respect to easements of light, air and access in the public streets." We think this claim was fully answered by the discussion of the learned court below and need not be further adverted to here. Quite aside from this question, however, is the condition of the defendants' railroad. They have a grant to construct and operate their railroad in Sixth avenue. If they ever initiated an adverse right, they certainly did not assert it as against any particular abutter upon the street. Their claim is based upon a hostile use extending the whole length of their line. In its operative effect upon abutting property it varies in degree only. It was by this open user that they claim to have acquired title by prescription. If they acquired it at all, they must have acquired a right which operated alike upon each property owner on the avenue, who had acquiesced in such use and occupation. By no possibility could it be asserted that they acquired a prescriptive right against one property owner and did not acquire a prescriptive right against the one adjoining. Their prescriptive title runs the whole length of the street, and as to those property owners who have acquiesced in the use and occupation if they acquired title to one piece of property they acquired title to all. There was no separation in use and no separation in the invasion, save in degree. When they recognized the title of one property owner upon the street, they broke the entire chain of open, notorious and hostile occupation and effectually disclaimed, when they voluntarily settled and paid such owner for the use and occupation, any prescriptive right for the whole length of their line upon the street.

The act of settlement in such case is entirely inconsistent with the claim of prescriptive title upon other portions of the street dependent upon the same proof. The case of *Mayor, etc., of New York v. Mott* (60 Hun, 423) and other cases cited by the learned court below upon this subject are abundant in support of the doctrine above announced. The recognition of the rights of abutting owners has been continuous from the decision in the *Story* case down to a very recent period and both before and after the claimed prescriptive title had been acquired. Such acts are inconsistent with the assertion of such a title. It is not needful that we further prolong this discussion. For these reasons and those discussed by the learned court below, we reach the conclusion that the judgment should be affirmed, with costs.

O'BRIEN, INGRAHAM and LAUGHLIN, JJ., concurred.

VAN BRUNT, P. J. (concurring):

I concur in the result upon the ground that the plaintiff being unable to oust the defendants, no prescription ran because of his failure to do so.

Judgment affirmed, with costs.